## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al.* | ) | Case No. 19-30289 |
| | ) | |
| Debtors[1], | ) | (Jointly Administered) |
| ------------------------------------------------- | ) | |
| BLACKJEWEL, L.L.C., *et al.* | ) | |
| | ) | Adv. Proceeding No. 3:20-ap-03007 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United Bank, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED BANK'S
### MOTION TO DISMISS

Defendant United Bank's Motion to Dismiss (the "Motion") is most notable for what it does not dispute: that United Bank froze the accounts of non-Debtor Clearwater Investment Holdings, LLC ("Clearwater") to prevent Clearwater from making an anticipated DIP loan to the Debtors that would have provided for the continued employment of Debtors' employees and permitted them to conduct an orderly reorganization.  This action (among other misconduct by United Bank) caused the Debtors to have to precipitously lay off more than 1,000 miners and other employees and to suspend their business operations, all in an unplanned and value destructive fashion.  The Motion admits these fundamental allegations, arguing that United Bank's intentional interference was "justified" and that it had an "interest in preventing Clearwater" from making the

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213). The headquarters for each of the Debtors is located at P.O. Box 1010, Scott Depot, West Virginia 25560.

DIP Loan, which caused tens of millions of dollars of resulting damages to the Debtors, their

estates, and creditors.  On the basis of its justification defense, United Bank seeks dismissal of

Plaintiffs' claim for tortious interference.

The Motion turns established standards under Rule 12(b)(6) and the Federal Rules of Civil

Procedure on their head.  Rather than construing factual allegations and reasonable inferences in

Plaintiffs' favor, it introduces extraneous factual contentions (on an issue that United Bank admits

is an affirmative defense and for which it bears the burden of proof) and asks the Court to construe

this incomplete and premature factual record in its favor.  This is improper and the Motion should

be denied for this reason alone.  Even if the Court were to entertain United Bank's argument at the

pleading stage, the Motion still should be denied because the self-serving conclusion that the

Debtors were "affiliates" of Clearwater are unsupported.  The loan documents United Bank asks

the Court to consider do not support this argument and applicable law provides otherwise.

Plaintiffs' Complaint sets forth a well-pleaded and plausible claim for tortious interference

including: the existence of a business expectancy in the form of the DIP loan; United Bank's

intentional interference with the expectancy; injury proximately caused to the Debtors; and tens of

millions of dollars of resulting damages.  Those factual allegations establish all of the required

elements for tortious interference and plausibly state a claim upon which relief can be granted.

Additionally, the Complaint alleges that United Bank acted improperly and that after failing in its

attempt to force payment of the Debtors' obligations to United Bank by third-parties, unfroze the

Clearwater account contrary to the affiliate argument advocated in the Motion.  United Bank's

reversal, after its abrupt and inappropriate actions had already crippled the Debtors' restructuring

efforts, undercuts its justification defense and supports Plaintiffs' allegations regarding improper

means.  The Complaint also alleges that United Bank froze other non-Debtor, non-Clearwater

- 2 -

accounts that the proposed DIP lender could have used to provide the expected DIP loan. These additional actions by United Bank also prevented the expected DIP loan from being available to the Debtors to facilitate a successful reorganization. These additional factual issues render the Motion inappropriate and it should be denied.

United Bank's arguments for dismissal of the aiding and abetting, unjust enrichment, and equitable subordination claims fare no better. Resolution of these arguments involves disputed issues of fact that are not apparent or resolvable from the face of the Complaint. For example, the nature and extent of United Bank's improper assistance to Mr. Hoops while he was breaching his fiduciary duties involves issues of fact that cannot be resolved on a motion to dismiss. The request for dismissal of the equitable subordination claim is particularly misplaced. United Bank asks the Court to determine that its conduct is not, as a matter of law, sufficiently egregious to support equitable subordination. United Bank's improper interference dealt a grievous blow to Debtors' plan to reorganize in an orderly fashion and caused tens of millions of dollars of damage, injuring Debtors' bankruptcy estates and the interests of hundreds of employees and other creditors. United Bank improperly prevented a DIP loan that would have preserved jobs and livelihoods supporting hundreds of families and allowed an orderly reorganization to maximize recoveries for creditors. United Bank disrupted all of that with a self-serving and inconsistent attempt to force non-debtors to pay off the Debtors' loans from United Bank. The Motion offers no basis for the Court to disregard these and other factual allegations stating a claim for equitable subordination. Accordingly, Plaintiffs respectfully request that the Motion be denied in its entirety.

## I.    <u>Factual Background</u>.

United Bank's improper and tortious interference with the Debtors' post-petition financing arrangements had a devastating impact on the Debtors' ability to reorganize in an orderly fashion.

- 3 -

(Compl. ¶ 1.)  As a result, the Debtors were forced to lay off hundreds of workers in an unplanned fashion, abruptly ceased business operations, and suffered tens of millions of dollars in damages. (*Id.*)  United Bank admits that it prevented a DIP loan by Clearwater to the Debtors in furtherance of United Bank's own interests: "United Bank had an interest in ***preventing Clearwater from using*** millions of dollars" to provide a DIP loan to the Debtors "several of which already owed millions of dollars to United Bank."  (Mot.[2] at 10 (emphasis added); *see also id.* ("United Bank's actions protected its interests from being prejudiced by the DIP Loan of $9 million from Clearwater to Debtors.").)

United Bank froze Clearwater's accounts at United Bank to prevent it from making the DIP loan.  (*Id.* ¶ 12.)  United Bank also "froze other accounts of Hoops Entities" to prevent Debtors from receiving the DIP loan.  (*Id.* ¶ 13.)  The freezing of these other counts was an intentional interference with Debtors' agreement and business expectancy independent of any claimed justification concerning Clearwater.  (*See id.* ¶ 25 ("United Bank intentionally interfered . . . by freezing bank accounts of Hoops and Hoops Entities other than Clearwater").)  United Bank blocked the use of the various accounts for a DIP loan unless some person or entity agreed to pay the Debtors' outstanding loan obligations to United Bank.  (*Id.* ¶¶ 15, 31.)  United Bank otherwise could not have recovered these amounts because of the Debtors' bankruptcy filings.  (*Id.* ¶ 31.)  As such, United Bank attempted to force through tortious means what it could not demand directly from the Debtors.  (*Id.* ¶¶ 15-16, 25-26, 31.)  When Debtors objected to United Bank's inappropriate and extortionate conduct, United Bank unfroze the Clearwater and other accounts (contrary to their current arguments about justification in exercising collateral rights in those accounts) but only after Debtors had already incurred significant injury from being forced to

---

[2]  Unless otherwise indicated, citations to the Motion are to the supporting "Memorandum of Law" filed by United Bank as Doc. #12.

suspend operations and abruptly layoff hundreds of workers with no advance warning. (*Id.* ¶¶ 1, 27-29.) This caused tens of millions of dollars of damages to the Debtors and their estates. (*Id.*).

Jeffrey A. Hoops, Sr. ("Hoops") is the former President and Chief Executive Officer of Blackjewel, L.L.C., Blackjewel Holdings, L.L.C., Revelation Energy Holdings, LLC, Revelation Management Corporation, and Revelation Energy, LLC. (*Id.* ¶ 5.) United Bank had a longstanding financial relationship with Hoops and numerous entities associated with him. (*Id.* ¶ 6.) Because of this relationship and the tens of millions of dollars that Mr. Hoops had on deposit with United Bank, (*id.* ¶¶ 6, 36), United Bank repeatedly did his bidding to the detriment of the Debtors. United Bank knew Hoops owed fiduciary duties to the Debtors, including because of its longstanding relationship with him. (*Id.* ¶ 37.) Nonetheless, United Bank helped Hoops breach those fiduciary duties by "facilitating" his inappropriate financial transactions. (*Id.* ¶ 38.) It aided and abetted Hoops' breaches, including by "improperly permit[ing] Hoops to make and direct financial transfers to himself and entities that he controlled from funds that belonged to Plaintiffs." (*Id.*) United Bank also "improperly permitted" Hoops to divert funds belonging to Plaintiffs to satisfy overdrawn accounts of other Hoops Entities. (*Id.*) In improperly facilitating these transactions, United Bank aided and abetted Hoops' breaches of fiduciary duty, resulting in significant harm to the Debtors. (*Id.* ¶¶ 39-40.) United Bank also engaged in other misconduct, including removing approximately $136,000 from a Blackjewel account outside of the ordinary course of business and without permission or notice. (*Id.* ¶¶ 21, 43.)

## II.    Law & Argument.

### A.    Rule 12(b)(6) Standard.

A motion to dismiss "should be granted only in very limited circumstances" if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could

be proven in support of its claim." *Gary William Plum v. Tunnelton Coop. Coal Co.*, 2010 U.S. Dist. LEXIS 81602, at *6, *9 (N.D.W. Va. Aug. 11, 2010) (citations omitted).  When evaluating a motion to dismiss, a court "must assume all of the allegations contained within the complaint to be true, resolve all doubts and inferences in favor of the plaintiff and view the allegations in a light most favorable to the plaintiff."  *HCR ManorCare, Inc. v. Youngblood*, 2016 U.S. Dist. LEXIS 118907, at *5 (N.D.W. Va. Sept. 2, 2016); *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (same).  The court must "draw all reasonable factual inferences from those facts in the plaintiff's favor."  *Napper v. United States*, 374 F. Supp. 3d 583 (S.D.W. Va. 2019).

The plausibility standard is not onerous and only requires that the complaint's factual allegations "be enough to raise a right to relief above the speculative level." *Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 484 (4th Cir. 2015).  As a result, "a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A motion to dismiss is "not a procedure for resolving a contest about the facts or the merits of the case," but rather "test[s] the formal sufficiency of the statement of the claim for relief." *Mey v. Castle Law Grp., PC*, 416 F. Supp. 3d 580, 583 (N.D.W. Va. 2019).  The motion will not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Richards v. Octane Envtl., LLC*, 2019 U.S. Dist. LEXIS 208560, at *9 (N.D.W. Va. Dec. 4, 2019) (quotations and citations omitted).

## B.    Plaintiffs Have Stated a Plausible Claim for Tortious Interference.

The Motion does not dispute that the Debtors have stated a *prima facie* case of tortious interference based on United Bank's improper conduct in freezing the bank accounts of Clearwater (and other Hoops Related Entities) that would have otherwise been available to fund the Debtors'

- 6 -

DIP Loan.  (Mot. at 6 (acknowledging elements of *prima facie* claim); *see also* Compl. ¶¶ 8-17, 23-32.)  The Complaint's specific factual allegations far surpass the low bar of plausibility necessary to state a claim.  Nonetheless, United Bank argues that Plaintiffs' claim should be dismissed because United Bank's conduct was "justified".  (Mot. at 5, 7.)

United Bank's justification argument should be rejected for several reasons, any one of which is sufficient to deny the Motion.  First, United Bank's claimed justification for interfering with the DIP Loan is an affirmative defense (for which United Bank bears the burden of proof) and depends on numerous unsubstantiated factual contentions that cannot be resolved on a motion to dismiss.  These unresolved factual issues include whether United Bank utilized improper means (as the Complaint specifically alleges it did), which United Bank admits would preclude any justification defense.  Second, United Bank has failed to provide any basis for the Court to hold that the Debtors and Clearwater are "affiliates" of one another, which is necessary for its justification defense.  Third, the Complaint alleges that United Bank improperly interfered with the DIP Loan by freezing accounts *other than Clearwater accounts* (Compl. ¶¶ 13, 25) and the Motion does not even mention, much less support, any purported justification for that action.

1. **Justification is an affirmative defense that cannot be resolved on a motion to dismiss.**

United Bank admits that a prima facie case for tortious interference does not include the absence of justification.  (*See* Mot. at 6.)  Nevertheless, United Bank argues – in passing in a single footnote – that the Court can rule on its justification defense at the pleadings stage.  (Mot. at 11 n.13.)  The sole authority that United Bank offers in support of this argument is the Fourth Circuit's decision in *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) recognizing that a court may rule on affirmative defenses if all relevant facts "clearly appear on the face of the complaint." United Bank's argument fails even under its own characterization.  The numerous facts relevant

- 7 -

to United Bank's justification defense do not appear "on the face of the complaint." United Bank seeks to introduce them in its Motion and have the Court decide those factual contentions in United Bank's favor. That is axiomatically improper for a motion to dismiss.

In any event, the *Goodman* case does not hold what United Bank suggests it does. *Goodman* did not involve a tortious interference claim and did not suggest that fact intensive affirmative defenses like justification can be decided on a motion to dismiss. Rather, *Goodman* involved a simple statute of limitations defense, which was apparent from the face of the complaint at issue. *Id.* What *Goodman* actually held was that affirmative defenses may only be resolved on a motion to dismiss in "relatively rare circumstances" and only where all the facts ***"sufficient to rule on an affirmative defense are alleged in the complaint."*** *Id.* (quotations omitted) (emphasis added). In this case, the numerous unsupported factual contentions United Bank offers to support its justification defense are not "alleged in the complaint." Moreover, the Complaint specifically alleges that United Bank acted without justification. (Compl. ¶ 26.)

Courts that have considered affirmative defenses to tortious interference claims similar to the one raised by United Bank have held that they cannot be resolved on a motion to dismiss. *E.g., Mid-Vol Coal Sales, Inc. v. Balli Steel PLC*, 2014 U.S. Dist. LEXIS 194992, at *14 (S.D.W. Va. Aug. 26, 2014) (denying motion to dismiss tortious interference claim because where the facts supporting an affirmative defense "do not appear within the four corners of the complaint, the defense[] cannot properly be asserted in a motion to dismiss"). Tellingly, the Motion **does not cite a single case** granting a motion to dismiss a tortious interference claim based on the affirmative defense of justification.[3] This is unsurprising because this defense involves a

---

[3] For example, while *Torbett v. Wheeling Dollar Savings & Trust Co.*, 173 W. Va. 210, 314 S.E.2d 166 (1983) involved a tortious interference claim and discussed applicable affirmative defense, it did not involve a motion to dismiss. Moreover, United Bank ignores *Torbett's* conclusion that the affirmative defense is fact specific, and includes consideration of whether the individual "employ[ed] wrongful means" in protecting its alleged financial interest. *Id.*

determination that "must be made on a case by case basis" and involves consideration of numerous case specific factors. *Id.* at \*13-14 & n. 3; *Seebach America, Inc. v. Seetech, LLC*, 2009 U.S. Dist. LEXIS 97902, at \*8 (S.D.W. Va. Oct. 16, 2009) (denying motion to dismiss and recognizing the impropriety of looking "beyond the pleadings to determine if [the defendant's] actions were legitimate" because "***[d]iscovery has not yet commenced, and such a ruling would be premature at this time***.") (emphasis added); *M&M Poultry, Inc. v. Pilgrim's Pride Corp.*, 2017 U.S. Dist. LEXIS 225176, at \*14 (N.D.W. Va. Apr. 5, 2017) (rejecting justification defense on motion to dismiss because "these matters will be better hashed out at trial.").

In this case, the facts necessary to support United Bank's claimed justification defense do not appear within the four corners of the Complaint.  The Clearwater loan documents were not attached to the Complaint and United Bank refused to provide them in Rule 2004 discovery to the Debtors based on contentions about privacy interests of third parties.  Even now, in the context of arguing that Clearwater is an affiliate of the Debtors and that the loan documents support its justification defense, United Bank filed them in redacted form to protect the privacy of the "sensitive financial information" of the Hoops Parties.  (Mot. at 8 n. 9.)  The absurdity of this contradiction (Clearwater is an "affiliate" of the Debtors but neither the Debtors nor the Court can see complete copies of the loan documents on which the Motion is based because a non-Debtor party does not give permission) belies the very conclusion United Bank urges.

The Court should not consider the loan documents because they were not included in the Complaint and because United Bank would not provide them to the Debtors in Rule 2004

---

at 216 n.14.  The other cases cited by United Bank likewise do not involve motions to dismiss.  *See Bryan v. Massachusetts Mut. Life Ins. Co.*, 178 W. Va. 773, 780 (1987) (involving motion for summary judgment); *Textron Fin. Corp. v. RV Having Yet, Inc.*, 2011 WL 13176212 (Bankr. M.D. Fla. Aug. 3, 2011) (same); *In re Crestmark of Pinellas Park, Inc.*, 218 B.R. 621, 624 (M.D. Fla. 1997) (same).

- 9 -

discovery.  Moreover, some of the documents, including Exhibit C, are not referenced in the

Complaint, much less relied upon.  United Bank cannot simply call something a "loan document"

and turn the 12(b)(6) standard into a review of cherry-picked exhibits that United Bank previously

refused to supply during the Debtors' Rule 2004 investigation.

Even if the Court were to consider the Clearwater Loan Agreement, it does not establish

that the Debtors are "affiliates" of Clearwater as necessary to United Bank's justification

argument.  (*See* Mot. at 8-9.)  United Bank's attempted application of the term is meritless, as

discussed below.  Regardless, it is not appropriate for resolution on a motion to dismiss.

Additionally, United Bank's own conduct demonstrates that it did not believe the justification

defense it advances now.  United Bank did not actually exercise any loan remedies against

Clearwater to pay the amounts owed by its alleged "affiliate[s]."  Instead, United Bank held the

accounts hostage and sought to compel Clearwater or Hoops to pay the amounts owed by the

Debtors.  (*See* Compl. ¶¶ 15, 25, 31.)  When its improper attempts failed, United Bank unfroze the

accounts, contrary to any claimed entitlement to exercise contractual rights.

Additionally, the Motion admits that United Bank's claimed justification defense is

unavailable if the interfering party uses "wrongful means" or "improper means."  (*See* Mot. at 7.)

The Complaint alleges repeatedly that United Bank used such improper means.  (Compl. ¶¶ 1, 25,

26, 31, 32.)  And United Bank admits that it sought to force payment by Clearwater or Hoops

through its actions of freezing the accounts.  (Mot. at 3 ("United Bank did not want its collateral

***to be available for use*** by Clearwater or Debtors until Debtors' outstanding debts to United Bank

were satisfied by Hoops, Clearwater or another non-Debtors.") (emphasis added).)  The Complaint

alleges that holding Clearwater's and other accounts hostage in an attempt to compel payment was

improper.  That presents an issue of fact that precludes application of any justification defense even under the authority cited by United Bank.  (Mot. at 7.)

Additionally, application of the justification defense is inappropriate before discovery is completed regarding the various accounts that United Bank froze.  Even under United Bank's justification theory, it was not entitled to prevent Clearwater from using amounts beyond those it alleges secured obligations of Clearwater's purported affiliates.  In other words, United Bank would not be justified in freezing all funds of Clearwater and other entities to prevent them from making the DIP loan if the frozen funds exceeded the amounts it claims were owed by affiliates. United Bank admits that it acted to "**prevent[] Clearwater from using millions of dollars** in Collateral to finance speculative ventures of bankrupt entities, several of which already owed millions of dollars to United Bank."  (Mot. at 10 (emphasis added).)  Discovery on the specific nature and extent of United Bank's action regarding the accounts is necessary to determine whether it used improper or wrongful means, as the Complaint alleges it did.  This is yet another issue of fact that precludes United Bank's claimed justification defense now.  This case does not present the "relatively rare circumstance" where the Complaint alleges facts sufficient to rule on United Bank's affirmative defense.  *Goodman*, 494 F.3d at 464; *Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership*, 213 F. 3d 175, 185 (4th Cir. 2000) (recognizing that motions to dismiss do "not generally invite an analysis of potential defenses to the claims asserted in the complaint").  The Motion should be denied and discovery permitted to proceed.

> **2.    The Debtors and Clearwater are not "affiliates" and the loan documents do not justify United Bank's interference.**

In claiming justification for its interference with the DIP Loan, United Bank asserts that the Debtors' bankruptcy filings constituted defaults under the Debtors' loan agreements that were "cross defaults" under Clearwater's separate loan agreements with United Bank, thereby entitling

- 11 -

United Bank to freeze Clearwater's account.   This argument is based on the unsupported contention that Clearwater and the Debtors are "affiliates."   United Bank purports to rely on Section 9(c) of the Clearwater Loan Agreement attached as Exhibit A to its Motion.   The Court should not consider that document for the reasons discussed above.   Even if the Court did, it does not support United Bank's argument because the Loan Agreement does not define the term "affiliate."   The plain meaning of the term "affiliate," as interpreted by courts within the Fourth Circuit, reveals that the Debtors and Clearwater are not "affiliates."

An "affiliate" relationship requires the existence of a formal ownership or control interest by one entity in another.   *See Jermar, Inc. v. L.M. Communs. II, Inc.*, 1999 U.S. App. LEXIS 12082, at *11-12 (4th Cir. June 11, 1999) (recognizing that "affiliate" is "a well established term in the business context," that "always denotes some significant degree of control between two entities.") (citations omitted).   As a result, when dealing with corporate entities, those "related as parent and subsidiary, characterized by identity of ownership of capital stock" are affiliates. *Alamria v. Telcor Int'l*, 920 F. Supp. 658, 673 (D. Md. 1996).   Courts within the Fourth Circuit have recognized that the term "affiliate" should be interpreted narrowly.   *See, e.g., Herndon v. Alutiiq Educ. & Training, LLC*, 2016 U.S. Dist. LEXIS 193725, at *8 (E.D. Va. Aug. 12, 2016) (indirect subsidiary was not an affiliate because "the preferred interpretation of 'affiliate' was the one which limited the Title VII exemption to direct subsidiaries of Native Corporations."); *Jermar*, 1999 U.S. App. LEXIS 12082, at *11.

Here, there are no allegations in the Complaint that any of the Debtors formally controlled or had an ownership interest in Clearwater.   Similarly, there are no allegations that Clearwater had an ownership interest in or formally controlled the Debtors.   The Debtor are not affiliates of Clearwater because Clearwater does not have ownership in them, much less own them as direct

- 12 -

subsidiaries. This conclusion is supported by the definition of "affiliate" cited by United Bank:

"**[a] corporation that is related to another corporation by shareholdings or other means of control.**" (Mot. at 9-10 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).)

Far from supporting United Bank's position, this definition reveals that the Motion should be denied because ownership interests or other means of control are lacking.

The Motion rests on the flawed premise that because the Debtors and Clearwater may each have had relationships with Hoops (as alleged by United Bank), the Debtors and Clearwater are "affiliates" for purposes of its justification defense. United Bank argues that "Clearwater and Debtors were affiliated because ***Hoops*** possessed ownership and control of the relevant entities." (Mot. at 10 (emphasis added).) United Bank's factual assertion that Clearwater and the Debtors each had some relationship with Hoops does not make them "affiliates" of *each other*. It is undisputed that Clearwater and the Debtors do not own or control the other. Under the relevant authority discussed above, including the authority cited in United Bank's own Motion, Clearwater and the Debtors are not affiliates and United Bank's unsupported interpretation should be rejected.[4]

### 3.    Plaintiffs have stated a claim for tortious interference based on United Bank's freezing of non-Clearwater accounts.

United Bank's justification argument is limited to Clearwater. But the Complaint also alleges that United Bank improperly interfered with the DIP Loan by freezing the accounts of Hoops and other entities beyond Clearwater. (Compl. ¶¶ 13, 25). The Complaint specifically alleges that the freezing of the non-Clearwater accounts constituted tortious interference: "United

---

[4] Applying the plain meaning of "affiliate" the Debtors and Clearwater are not affiliates of each other. To the extent the Court believes there is any ambiguity in the term, however, that ambiguity must be construed against United Bank, as the lender and drafter of the Loan Agreement. *E.g.*, *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 711 (4th Cir. 2001) ("any doubts in the interpretation of a contract must be resolved against the drafter[.]"); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319, 321 n.7 (4th Cir. 2001) (recognizing the "general maxim that a contract should be construed most strongly against the drafter"). In any event, such ambiguity would require denial of the Motion prior to discovery.

Bank intentionally interfered with the agreement and business expectancy between Plaintiffs, Hoops, and Clearwater to make the DIP Loan by freezing bank accounts of Hoops and Hoops Entities other than Clearwater." (*Id.* ¶ 25). Even if the Court accepted all of United Bank's justification arguments, which it should not for the reasons discussed above, Plaintiffs have stated a viable and plausible claim for tortious interference based on accounts other than Clearwater.

> **B.    Debtors Have Stated a Plausible Claim for Aiding and Abetting Breach of Fiduciary Duties.**

United Bank argues that the Debtors did not allege that United Bank knew that Hoops was breaching his fiduciary duties or that United Bank provided substantial assistance to him. (Memo. at 12-13.) These conclusory arguments are not consistent with the substantive allegations of the Complaint, which alleged that United Bank facilitated and improperly permitted Hoops' actions of taking funds belonging to Plaintiffs and diverting them to himself or other entities he controlled. The Complaint also alleges that United Bank improperly permitted these actions to benefit itself by applying Plaintiffs' funds to the overdrawn accounts of other entities at United Bank. There is no "magic words" requirement in pleading this cause of action and the substance of Plaintiffs' allegations establishes a plausible claim for aiding and abetting.

The Debtors did not merely allege that "United Bank was aware of Hoops'" fiduciary relationship with the Debtors as United Bank suggests. (Mot. at 12-13.) To the contrary, the Complaint specifically alleges that "United Bank *improperly permitted* Hoops to make and direct numerous financial transfers to himself and entities that he controlled from funds that belonged to Plaintiffs" and to satisfy overdrawn accounts of other entities at United Bank. (Compl. ¶ 38 (emphasis added).) Plaintiffs also alleged that United Bank knew of Hoops' fiduciary duties and had "longstanding business and financial relationships with him, Plaintiffs, and various of the Hoops Entities." (*Id.* ¶ 36.) United Bank "aided" and "facilitated Hoops' breaches of fiduciary

- 14 -

duties" by improperly permitting the diversion of funds belonging to Plaintiffs to Hoops personally and to his other entities.  (*Id.* ¶ 38.)

These factual allegations and the reasonable inferences drawn from them more than satisfy any pleading requirement for aiding and abetting.  As the Motion concedes, all that is required to state a claim is that a Court can draw a "reasonable inference that defendant is liable for the misconduct alleged."  (Mot. at 5 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).)  Based on the allegations in the Complaint regarding United Bank's knowledge, its facilitation of numerous breaches of fiduciary duties and tortious conduct, and its improper participation in permitting and completing transfers of Plaintiffs' funds to Hoops and other entities – all from accounts maintained at United Bank – Plaintiffs have far surpassed this standard.

Moreover, courts recognize that third parties like United Bank, when "dealing with an officer who is obviously using corporate assets for his own benefit . . . ***cannot assume that the officer has the authority to do so[.]*** ' *Tysons Toyota v. Globe Life Ins. Co.*, 1994 U.S. App. LEXIS 36692, at *11-12 (4th Cir. Dec. 29, 1994) (internal citations and quotations omitted) (emphasis added).  When faced with Hoops' clear misuse of assets belonging to Plaintiffs for his personal benefit and the benefit of other Hoops Entities, this should have raised serious red flags with United Bank.  *Id.* ("when a corporate officer deals with corporate funds as if they were his own, it should awaken distrust in the minds of third parties.").  Rather than questioning this conduct, United Bank actively facilitated it, including so that United Bank could receive funds belonging to Plaintiffs to satisfy overdrawn accounts of other entities as directed by Hoops.  (Compl. ¶¶ 35, 38.)  This states a plausible claim for aiding and abetting.  At a minimum, United Bank's knowledge of Hoops' breaches of fiduciary duties raises factual questions that require discovery and should not be resolved on a motion to dismiss.  *See Gariety v. Thornton*, 2006 U.S. Dist. LEXIS 31296, at *31-

32 (S.D.W. Va. Apr. 3, 2006) (denying summary judgment on aiding and abetting claim because "what remains in dispute is whether [defendants] knew the Patterson defendants were in breach of their fiduciary duty (if they were) and, if so, did they aid and abet that breach . . . ."). This issue is not capable of resolution on a motion to dismiss.[5]

United Bank's related argument, that it did not provide Hoops with "substantial" assistance is also a disputed factual issue that cannot be decided on a motion to dismiss.  In support of its argument, United Bank relies on *Courtney v. Courtney*, 413 S.E.2d 418, 426 (W. Va. 1991).  That case, however, undercuts United Bank's position because the court held that "we are unable to determine whether the plaintiffs can establish liability under this theory because the facts are not sufficiently developed."  *Id.*  In *Courtney*, the Court listed a series of factors, all of which require extensive factual discovery and are not appropriate for resolution on a motion to dismiss.  *Id.* at 426 (holding that "the complaint states a claim for accomplice liability, and the plaintiffs ***should be able through discovery*** to develop facts to support the claim") (emphasis added).

In addition, United Bank's argument that it was merely "processing transactions" for Hoops and did not provide substantial assistance, (Mot. at 13-14), is unsupportable and not capable of resolution on a motion to dismiss.  The facts alleged in the Complaint involve more than mere inaction or a failure to report.  United Bank engaged in purposeful action, outside of the ordinary course of business, to assist and facilitate Hoops in taking Plaintiffs' funds and directing them to himself or other entities.  United Bank acted to benefit itself by facilitating the improper transfers to apply to other overdrawn accounts at United Bank.  (Compl. ¶ 38.)  Without this substantial assistance, Hoops' breaches of fiduciary duties could not have been accomplished.  This level of participation by United Bank distinguishes this case from those where financial institutions were

---

[5] If the Court concludes that some additional allegation of United Bank's knowledge of the breach of fiduciary duty is required, Plaintiffs request leave to supplement or amend the Complaint with this allegation instead of dismissal.

found not to have provided substantial assistance.[6]  *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273,

295 (2d Cir. 2006) (denying motion to dismiss aiding and abetting claim because the defendant's

"commingling of funds was not only an indication of a breach of fiduciary duty - - it was, in and

of itself, a breach."); *Perlman v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 161084, at *23 (S.D.

Fla. Dec. 21, 2011) ("the assistance alleged goes beyond silence or inaction. Rather, the Bank

affirmatively assisted, for example, the breach of fiduciary duty by effecting the transfers of funds

from the entity accounts to [the] personal accounts.").  Accordingly, the Court should deny United

Bank's Motion to dismiss the aiding and abetting claim.

### C.    Plaintiffs Have Stated a Plausible Claim for Unjust Enrichment.

United Bank does not dispute Plaintiffs' allegation that it took $136,000 in funds from

Blackjewel's bank account at United Bank without authorization.  (Compl. ¶ 43.)  Similarly, it

does not dispute that it received payments for obligations of other entities from funds properly

belonging to Plaintiffs.  (*Id.* ¶ 42.)  United Bank nonetheless argues that Plaintiffs' unjust

enrichment claim should be dismissed because its misconduct is governed by contract and the

Debtors' "have not alleged the existence of an implied contract that would give rise to such a

claim." (Mot. at 15-16.)  Both of these arguments lack merit and should be rejected.

First, Plaintiffs have not alleged – as United Bank suggests – that an express contract

governs the parties' dispute concerning the funds that United Bank wrongfully took.  Under West

---

[6] The cases that Defendant cites are readily distinguishable.  In two cases, the court dismissed aiding and abetting claims because the alleged aid was only a failure to report, i.e., mere inaction.  *S.USA Life Ins. Co. v. Foster*, 2019 U.S. Dist. LEXIS 81183, at *15 (W.D. Va. Apr. 29, 2019) ("the substantial assistance alleged . . . is S.USA Life's inaction by failing to report the third parties' fraud."); *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1347 (E.D. Mich. 2011) ("[T]he amended complaint alleges only a failure to act.  A failure to act generally does not constitute substantial assistance.").  The remaining case relied upon by United Bank is distinguishable for a variety of reasons including because the bank did not know of the tort, and the bank's conduct consisted of simply processing transfers out of an account, which the court labelled "normal banking practices."  *In re § 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 427 (D.S.D. 2010).  As discussed above, there was nothing normal about the financial transactions that United Bank facilitated, including the manner in which it permitted Hoops to freely divert funds from Plaintiffs to further Hoops' and United Bank's own interests.

Virginia law, an unjust enrichment claim is only barred by the existence of a contract "covering the same subject matter."  *See, e.g.*, *Worldwide Machinery L.P. v. Columbia Gas Trans., LLC*, 2019 WL 355174 (N.D.W. Va. Aug. 5, 2019).  Plaintiffs have not alleged that documents discussed in paragraph 22 of the Complaint govern the subject matter raised by the unjust enrichment claim.

United Bank selectively ignores critical portions of the Complaint including Paragraph 42, where Plaintiffs alleged that "United Bank received payments for obligations of other entities from funds properly belonging to Plaintiffs."  (Compl. ¶ 42.)  Rather than alleging that United Bank's conduct was governed by loan documents, Plaintiffs allege that United Bank acted improperly and in an *unauthorized* manner to benefit itself.  Plaintiffs also alleged that "United Bank has also been unjustly enriched by the approximately $136,000 it removed from Blackjewel's account prior to July 1, 2019 and applied to a loan balance."  (*Id.* ¶ 43.)  The Debtors do not allege that this action is governed by an express contract.  Where there is a factual dispute about whether a contract covers the subject matter of the parties' dispute, a motion to dismiss should be denied.  *See O'Brien v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 134573, at *13-14 (N.D.W. Va. Dec. 20, 2010) (denying motion to dismiss unjust enrichment claim where the plaintiff was not alleging a breach of contractual provisions and "whether Allstate received a benefit is a question of fact."); *LaPosta Oldsmobile, Inc. v. GMC*, 426 F. Supp. 2d 346, 356 (N.D.W. Va. 2006) (denying motion to dismiss unjust enrichment claim because "the express terms of the . . . Agreement do not cover the identical subject matter alleged in LaPosta's complaint.").[7]

---

[7] Unable to identify any contractual provisions that expressly apply to the Plaintiffs' unjust enrichment claim, United Bank resorts to relying on agreements that it has with other entities, including Clearwater.  (Mot. at 16.)  Contracts that United Bank has with Clearwater and other third parties do not bar the Debtors' unjust enrichment claims.  *See generally Smith v. 21st Century Natural Fuels, LLC*, 2016 U.S. Dist. LEXIS 50410, at *15 n.7 (S.D.W. Va. Apr. 14, 2016) ("If a purchasing contract between the Parties exists, Mr. Smith's claim[] for . . . unjust enrichment . . . fail as a matter of law.").  United Bank cites no authority that third-party contracts bar the unjust enrichment claims.

Second, United Bank's Motion misstates the requirements to state an unjust enrichment claim under West Virginia law.  Parties are not required to allege "the existence of an implied contract that would give rise to such a claim." (Mot. at 16.)  United Bank does not cite a single case supporting this argument.  All that is required to state a claim are allegations demonstrating: (1) a benefit conferred upon the defendant; (2) an appreciation or knowledge by the defendant of such a benefit; and (3) the defendant's acceptance of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.  *See generally Employer Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 471 (S.D.W. Va. 2013) (internal citations omitted).  Plaintiffs have alleged sufficient factual allegations to satisfy each of these elements.  Accordingly, the Motion to dismiss the unjust enrichment claim should be denied.

### D.     United Bank's Egregious and Improper Conduct Supports the Debtors' Equitable Subordination Claim.

United Bank's arguments seeking dismissal of the Debtors' equitable subordination claim should be rejected because Plaintiffs have alleged egregious conduct sufficient to state a claim. As discussed above, United Bank held numerous accounts hostage in an improper attempt to force payment of obligations that United Bank could not demand directly from the Debtors.  (*See supra*, at 2-4.)  United Bank was willing to jeopardize (and eventually destroy) hundreds of jobs and the Debtors' ability to efficiently reorganize in pursuit of United Bank's attempt to compel a financial benefit for itself.  (Compl. ¶¶ 8-18, 27-31, 47.)  After Debtors disclosed that without additional funding "they would not be able to continue as a going concern, that their business values would be destroyed, and that any hope for a reorganization for the Debtors would be lost," (Compl. ¶ 9), Defendant froze accounts to "***prevent[] Clearwater from using*** millions of dollars" to provide a DIP loan to the Debtors" (Mot. at 10 (emphasis added)), unless United Bank was paid first.

United Bank's coercive acts were sufficiently "egregious conduct" to state a claim for equitable subordination. United Bank's improper freezing of the accounts and interference with the DIP Loan was the most significant and most damaging action that has occurred in the bankruptcy cases. The Debtors' attempts to reorganize have never fully recovered. United Bank admits that equitable subordination is appropriate to "offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct." (Mot. at 17 n.14.) In this case, that standard supports subordination of tens of millions of dollars of claims. In any event, the egregiousness of United Bank's actions and the extent of the resulting harm are issues of fact that should not be resolved on a Rule 12(b)(6) motion. *E.g.*, *In re LMI Legacy Holdings, Inc.*, 2017 Bankr. LEXIS 1150, at *34 (D. Del. Apr. 27, 2017) ("the nature of the underlying conduct (and, at least arguably, any resulting injury) will have to be fleshed out as a factual matter – a task that is, of course, inappropriate . . . under Rule 12(b)(6).") (citations omitted); *In re Adelphia Communs. Corp.*, 365 B.R. 24, 69 (S.D.N.Y. June 11, 2007) ("[t]he Court is not in the position to conclude, as a matter of law, that under no circumstances could the Creditors' Committee establish the required inequitable conduct"). Accordingly, the Court should deny United Bank's request to dismiss Plaintiffs' equitable subordination claim.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny the Motion to Dismiss, in its entirety.

010-9097-1933

Dated: July 23, 2020

Respectfully submitted,

SUPPLE LAW OFFICE, PLLC

Joe M. Supple No. 8013
801 Viand St.
Point Pleasant, WV 25550
304-675-6249
joe.supple@supplelaw.net

– and –

SQUIRE PATTON BOGGS (US) LLP

*/s/ Stephen D. Lerner*
Stephen D. Lerner (admitted *pro hac vice*)
Scott A. Kane (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
F. Maximilian Czernin (admitted *pro hac vice*)
Travis A. McRoberts (admitted pro hac vice)
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
scott.kane@squirepb.com
nava.hazan@squirepb.com
max.czernin@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel for the Debtors and
Debtors-in-Possession*