# EXHIBIT 9

BLACKJEWEL, LLC, et al. v.
UNITED BANK

PATRICIA HOOPS
October 12, 2021

```
 1         IN THE UNITED STATES BANKRUPTCY COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2

 3   * * * * * * * * * * * * * * * * * * * * * *

 4   In re:
                                    Chapter 11
 5   Blackjewel, L.L.C., et al,
                             Case No. 19-30289
 6         Debtors,
                        (Jointly Administered)
 7   _____

 8
     BLACKJEWEL, L.L.C., et al.
 9
           Plaintiffs,
10
     v.                    Adv. Proceeding 3:20-ap-03007
11

12   UNITED BANK,

13         Defendant.

14   * * * * * * * * * * * * * * * * * * * * * *

15

16         Videotaped deposition of PATRICIA HOOPS taken
     by the Defendant under the Federal Bankruptcy Rules in
17   the above-entitled action, pursuant to notice, before
     Elizabeth A. Hill, Court Reporter, at Steptoe &
18   Johnson, 1700 Chase Tower, Charleston, West Virginia,
     on the 12th day of October, 2021.
19

20

21              REALTIME REPORTERS, LLC
                   Elizabeth A. Hill
22                    713 Lee Street
                Charleston, WV  25301
23                   (304) 344-8463
                  realtimereporters.net
24
```

 1     A.  Yes.  I was 1 percent owner.

 2     Q.  And the 99 percent was --

 3     A.  Clearwater.

 4     Q.  -- a trust?

 5     A.  Yes, Clearwater Trust.

 6     Q.  Who are the trustees for Clearwater Trust?

 7     A.  It's my youngest son, Josh, and my oldest son,

 8  Jeffrey.

 9     Q.  All right.  Why was Clearwater Investment

10  Holdings set up?

11     A.  Just for an investment so that we could do our

12  own -- you know, or I could do some businesses and --

13  that's it.

14     Q.  What is your role in Clearwater Investment

15  Holdings?

16          MS. SIEG:  Objection.  Vague as to the

17  term "role."  You can answer.

18     A.  Okay.  I just, I guess, discuss things with

19  Brent and -- you know, Brent Walls mainly because he

20  keeps up with everything, all the daily transactions,

21  and I try to keep up with some of that.  But my -- what

22  I like doing is just going to the properties and

23  checking out everything, and that's really my job, and

24  I love it.

BLACKJEWEL, LLC, et al. v.
UNITED BANK

PATRICIA HOOPS
October 12, 2021

1    Q.   Now, what is -- do you have a title with

2  Clearwater Investment Holdings?

3    A.   I am the -- I guess what would I be?  Like

4  manager, owner, 1 percent owner.

5    Q.   Now, when you say you like to go to the

6  properties and check things out, are you discussing

7  what you do at the Grand Patrician?

8    A.   Both, the Grand Patrician and the Venetian.  I

9  go over to the Grand Patrician and look and see what's

10 going on, what, you know, the needs are, and right now

11 it's a hard time getting certain supplies, like steel

12 and wood, and just things like that, seeing how the

13 progress is going.

14   Q.   Do you take on any other duties with

15 Clearwater Investment Holdings?

16             MS. SIEG:   Objection.

17   A.   No.

18             MS. SIEG:   Vague.  Go ahead.

19   A.   Not really.

20   Q.   Now, you said Brent Walls handles the day-to-

21 day.

22   A.   Uh-huh.

23   Q.   What is Brent Walls' title in Clearwater

24 Investment Holdings?

 1           MR. KANE:  Object to the form of the

 2  question.

 3      Q.  You can answer.

 4      A.  Brent Walls is our CFO, or my CFO.  He's been

 5  with us for years.

 6      Q.  Do you trust Mr. Walls to handle the day-to-

 7  day finances of Clearwater Investment Holdings?

 8      A.  Yes.

 9      Q.  Have you ever had reason to question his

10  ability?

11      A.  No.

12      Q.  Have you ever had reason to question whether

13  he was acting properly on behalf of Clearwater

14  Investment Holdings?

15      A.  No.

16      Q.  How long has Brent Walls been the CFO of

17  Clearwater Investment Holdings?

18      A.  Well, it's been in business for -- since 2017

19  probably, but he's been with us longer.

20      Q.  What do you mean when you say, "He's been with

21  us longer"?

22      A.  He's worked for us for some time.  I think

23  about six years.

24      Q.  And as we have established, when you say "us,"

1          MS. SIEG:  Objection.  Vague.

2      A.  I don't know how to answer that question.

3      Q.  We'll come back to that --

4      A.  Okay.

5      Q.  -- in a bit.  Okay.  So you said that

6  Mr. Walls is the CFO.  Has he been the CFO for

7  Clearwater during its entire existence?

8      A.  Yes.

9      Q.  And I want to make sure we're clear.  When we

10  say "Clearwater," we mean Clearwater Investment

11  Holdings --

12      A.  Yes.

13      Q.  -- not the trust or something else?

14      A.  Yes.

15      Q.  Is that clear?

16      A.  Right.

17      Q.  Okay.  So he's been the CFO the entire time.

18  What are his duties as the CFO of Clearwater?

19      A.  He just keeps up with everything coming and

20  going, all the businesses.  He's got a whole team, you

21  know, that he has to just keep up with the ins and outs

22  of everything going.  I don't know how he does it, but

23  he does.

24      Q.  Does he work for other companies that you have

1    Q.  When you say, when you testified that

2  Clearwater would put in a little bit to these

3  businesses, what did you mean?

4    A.  I meant we helped them to start their

5  business.  I don't know how else to say it.  I'm --

6    Q.  Did Clearwater loan these businesses money?

7           MS. SIEG:  Objection.

8    A.  These are some questions you may have to talk

9  to Brent Walls about because he knows more about the

10 comings and, you know, what went in, what went out.

11   Q.  All right.  Do you allow Brent Walls to handle

12 the financial issues surrounding -- or I guess the

13 financial, let's start with, recordkeeping for

14 Clearwater Investment Holdings?

15   A.  Yes.

16          MS. SIEG:  Objection.  Vague.

17   Q.  Does Brent Walls handle the day-to-day banking

18 for Clearwater Investment Holdings?

19   A.  Yes.

20   Q.  And how long has he done that?

21   A.  As long as it's been established.

22   Q.  Did you grant him the authority to handle the

23 day-to-day banking on behalf of Clearwater?

24   A.  Yes.

1      A.   Yes.

2              MS. SIEG:   Objection.   Vague.

3      A.   Yes.

4      Q.   Are you compensated for your role with

5  Clearwater Investment Holdings?

6      A.   No.

7      Q.   About how many hours per week do you spend

8  working on matters related to Clearwater Investment

9  Holdings?

10             MS. SIEG:   Objection.   Asked and

11 answered.

12     Q.   You can answer.

13     A.   Just so many hours a day.   I mean, it's not

14 pinpointed to how many.   It just depends on what's

15 going on.

16     Q.   Other than the time you have noted with the

17 Grand Patrician and the Venetian, do you spend any

18 additional time working or attending to matters

19 regarding Clearwater Investment Holdings?

20             MS. SIEG:   Objection.   Vague.

21     A.   I'm not sure how to answer that.

22     Q.   Other than what you have testified about

23 regarding the Grand Patrician and the Venetian, do you

24 work -- do you undertake -- let me strike that.

1    Q.  The question -- and the objections are noted.

2  The question was, do your sons have any other role

3  other than what we have discussed in the Clearwater

4  Investment Holdings business?

5    A.  No.

6              MR. KANE:   Same objection.

7    Q.  Do you know whether Jeff -- strike that.

8    Does your husband, Jeff, have any role in

9  Clearwater Investment Holdings?

10             MS. SIEG:  Objection.  Vague.

11   A.  No.

12   Q.  Has he ever?

13   A.  No.

14   Q.  Do you know whether your husband, Jeff, has

15 ever acted on behalf of Clearwater Investment Holdings?

16             MS. SIEG:  Objection.  Vague.

17   A.  No.  Not that I know of.

18   Q.  Do you know whether Clearwater Investment

19 Holdings ever loaned money to a company or a group of

20 companies called Blackjewel?

21   A.  I know I did a revolving account with them

22 through United.

23   Q.  Specifically what company are you testifying

24 about?

1      A.  Yes.

2      Q.  All right.  Can you read the next two lines?

3      A.  "Now that RSP is owned by Clearwater, Trish

4  will sign as member/manager as she is the 1 percent of

5  Clearwater," owner of -- well.  "From time to time Jeff

6  may sign as manager."

7      Q.  And that's from Clearwater's CFO?

8      A.  Yeah, that's from Brent.

9      Q.  Do you have any reason to question Mr. Walls'

10  representation that Jeff will from time to time sign as

11  manager of Clearwater?

12             MS. SIEG:  Objection.

13             MR. KANE:  Object to the form of the

14  question including as to the characterization.

15      A.  I'm not sure why that's there.

16             MS. SIEG:  Just one second.  Objection.

17  Foundation.  Calls for speculation.

18      Q.  I'm going to show you what's being marked as

19  Defendant's Exhibit 8.

20             (Defendant's Exhibit No. 8 marked for

21             identification)

22      Q.  All right, Mrs. Hoops.  The bottom of that

23  first page, do you see an email from what we have

24  identified as Brent Walls' email address?

1     A.  Yes.

2     Q.  On January 27th, 2019?

3     A.  Yes.

4     Q.  And that was sent to

5  jdavidmills@bankwithunited and your husband's

6  Blackjewel address; is that right?

7     A.  It looks like it.

8     Q.  Do you see where it says -- where Brent Walls

9  says, "Please find attached the Clearwater Executive

10  Summary"?

11     A.  Yes.

12     Q.  Now turn your attention to the Bates number

13  ending in 579, fourth page.  Do you see that attachment

14  labeled, "Clearwater Investment Holdings, LLC,

15  Executive Overview"?

16     A.  Yes.

17     Q.  Have you seen this document before?

18          MS. SIEG:  Objection.  Are you referring

19  to the attachment or the whole package here,

20  including --

21          MS. BUNN:  The attachment labeled,

22  "Clearwater Investment Holdings, LLC, Executive

23  Overview."

24     A.  I'm trying to see the date.

1    Q.  You'll agree with me that what we just went

2  over was an email from January 27th of 2019 from Brent

3  Walls, indicating that attached is the Clearwater

4  Executive Summary?

5                MS. SIEG:  Objection to the extent it

6  implies the attachment was drafted on the same day the

7  email was sent.  I don't believe the document has a

8  date on it.

9                THE DEPONENT:  That's why I was looking

10 to see what date.  I don't see a date on it.

11    Q.  You see the date on the email from Brent

12 Walls; right?

13                MS. SIEG:  Same objection.

14    A.  Yeah, I see that.

15    Q.  So back to the Executive Overview.  Do you

16 recognize this document?

17    A.  Not that I recognize it, but I know about some

18 of it, I mean, you know, I mean.

19    Q.  What do you know about this --

20    A.  As far as the 1 percent and the 99 percent.

21    Q.  Okay.  Do you know who prepared this document?

22    A.  Probably Eddie, but let me -- I'm not sure.

23    Q.  Who is Addie?

24    A.  Eddie Cunningham.

BLACKJEWEL, LLC, et al. v.                                        PATRICIA HOOPS
UNITED BANK                                                        October 12, 2021

1     Q.  What is -- what's her role?

2              MS. SIEG:  Eddie.

3     A.  Eddie.

4     Q.  Eddie Cunningham?

5     A.  Yes.

6     Q.  Sorry.

7     A.  He's our -- he's like a lawyer, and he does

8  our financial, and he helps us make investments and

9  things.

10    Q.  Can you read the third sentence of the

11 Executive Overview that begins with, "Jeffrey A. Hoops,

12 Sr."?

13    A.  "Jeffrey Hoops, Sr., Jeremy Hoops, and Josh

14 Hoops."

15    Q.  The next sentence.

16    A.  Oh, "Jeffrey A. Hoops, Sr.," okay, "will from

17 time to time act as manager for Clearwater.  The

18 Clearwater Trust is set up in that way 100 percent of

19 the activity within Clearwater."

20    Q.  Do you have any reason to disagree with this

21 Executive Overview?

22              MS. SIEG:  Objection.  Foundation.

23 Objection.  Calls for speculation.

24              MR. KANE:  Object to the form of the

1  question on the same bases.

2      Q.  You can answer.

3      A.  Do what?  Oh, I'm sorry.  I was still going

4  through it.

5      Q.  Do you -- and take your time.  To the extent

6  that you want more time to look through it, you're

7  welcome to.

8      Do you, as the manager of Clearwater Investment

9  Holdings, have any reason to question the content of

10  this Executive Overview?

11          MS. SIEG:  Objection.  Foundation.  Calls

12  for speculation.  But you can answer.

13          MR. KANE:  Objection as well.

14      A.  I don't think so.  It looks like -- no.

15      Q.  I just want to make sure the record is clear.

16  When you say --

17      A.  I don't think so.

18      Q.  You do not question this document?

19          MS. SIEG:  Objection.  That misstates her

20  answer.  She said, "I don't think so."

21          MR. KANE:  Objection to the form of the

22  question.

23      Q.  Sitting here today, do you have any reason to

24  question the content of this document?

1          MS. SIEG:  Objection.  Calls for

2   speculation.  Foundation.  You can answer.

3          MR. KANE:  Objection.

4     A.  I don't -- I think it's okay.

5          MS. SIEG:  We have been going about two

6   hours.  Do you need a break?

7          THE DEPONENT:  Oh, I'm fine.

8          MS. SIEG:  Okay.

9          MS. BUNN:  Can we take one quick break?

10         MS. SIEG:  Sure.

11         MS. BUNN:  Thank you.

12         THE VIDEOGRAPHER:  The time is 3:00 p.m.

13  We are off the record.

14         (Off the record.)

15         THE VIDEOGRAPHER:  The time is 3:08 p.m.

16  We're on the record.

17         (Defendant's Exhibit No. 9 marked for

18         identification)

19  BY MS. BUNN:

20    Q.  All right, Mrs. Hoops, I am handing you what's

21  been marked as Defendant's Exhibit 9.  If you could

22  flip to the next-to-the-last page, do you see the email

23  from Brent Walls to your husband's Blackjewel address

24  on August 7th of 2018?

BLACKJEWEL, LLC, et al. v.
UNITED BANK

PATRICIA HOOPS
October 12, 2021

1    A.   You said next-to-the-last page?

2    Q.   Yes.

3    A.   Yes.

4    Q.   Do you see in the second half of that email,

5  it begins, "Here is what we need," and Brent appears to

6  put, "We need to open bank accounts for Clearwater

7  Investment Holdings, Grand Patrician Resort"?  And do

8  you see the second bullet point where it says, "I am

9  the CFO of Clearwater Investment Holdings, LLC, and

10 will need to be an authorized signer"?

11   A.   Yes.  That would be Brent.

12   Q.   Yes.  I'm going to ask you to turn to the

13 first page.  Do you see where your husband responded to

14 Brent Walls that same day?  Can you please read your

15 husband's response, starting with, "This appears"?

16   A.   "This appears to be all in line, but due to

17 the lack of any separation of duties as it relates to

18 Clearwater, I would like to have Jeffrey, Jeremy, and

19 myself as signers.  Then I will give you the key fob to

20 do authorized wires.  Thanks, Jeff."

21   Q.   Do you see Brent's response there above that?

22   A.   Yes.

23   Q.   What does he say?

24   A.   "I understand and agree."  What date is this?

1  Oh, the 18th.  August the 18th?

2      Q.  Yes.  It appears to be --

3      A.  Of 2018.

4      Q.  August of 2018.  As the manager of Clearwater

5  Investment Holdings, do you disagree with any of the

6  representations in these emails?

7            MS. SIEG:  Objection.  Foundation.  Calls

8  for speculation.  And, again, for the record, the

9  witness is not copied on any of these communications.

10           MR. KANE:  Object to the form of the

11 question, including as to foundation, and object to

12 counsel's characterization.

13     A.  And this is the first I have seen of it, so I

14 don't know how to reply to that.

15     Q.  As you sit here today, as the manager of

16 Clearwater Investment Holdings, reading it here

17 today -- and you can take some more time to read it if

18 you need to -- do you disagree with the representations

19 in this email by Mr. Walls or Mr. Hoops?

20           MS. SIEG:  Objection.  Same objection.

21 This witness is not going to sit here and provide a

22 speculative account of what these folks meant and what

23 they said.

24     A.  No, I don't know --

 1          MR. KANE:  Same objections by me as my

 2   prior ones.

 3      A.  I have no answer for that.

 4      Q.  The question is:  As you sit here today, do

 5   you disagree with any of the representations by

 6   Mr. Walls or Mr. Hoops in these emails?

 7          MS. SIEG:  Objection.

 8          MR. KANE:  Same objections.  Sorry.

 9          MS. SIEG:  Same objections, and asked and

10   answered.

11          MS. BUNN:  Again, coaching the witness is

12   absolutely --

13      A.  No, I had my own answer, and I said I don't

14   know what -- I don't know this document.

15      Q.  I'm not asking you whether you know the

16   document.  And if you need to take more time to read

17   it, that is --

18      A.  No, I don't.

19      Q.  -- perfectly fine.  Have you read what's

20   included in these emails?

21      A.  Yes.

22      Q.  And do you disagree with what is included in

23   these emails?

24          MS. SIEG:  Same objection.

1              MR. KANE:   Same --

2              MS. SIEG:   The witness has been asked and

3    answered this question multiple times.

4              MS. BUNN:   She has not answered the

5    question.

6              MR. KANE:   Same objection.

7       A.   I'm not going to say whether I agree because I

8    don't know for sure.

9       Q.   You are --

10      A.   I can see what's written on the paper.

11      Q.   You are the manager of Clearwater Investment

12   Holdings; correct?

13      A.   Right.

14      Q.   Do you -- as the manager of Clearwater

15   Investment Holdings, do you object to your husband's

16   representation that he should be an authorized signer

17   on Clearwater's accounts?

18              MS. SIEG:   Objection.   Same objections as

19   before.

20              MR. KANE:   Object as to foundation and

21   counsel's characterization of the exhibit.

22      A.   I mean, for me personally, I didn't mind if he

23   signed a few things, you know, signed if I couldn't;

24   but most of the time it was me, and Brent.

1  evening -- I'm not sure what the last date or what the

2  last time they were in there because he was there for

3  days.  It seemed like for days.

4       Q.  I think you have testified you're unsure of

5  the amount of the DIP loan; is that right?

6       A.  Uh-huh.

7       Q.  Is that a yes?

8       A.  Yes.  Sorry.

9       Q.  Do you recall any of the other proposed terms?

10            MS. SIEG:  Objection.  Foundation.

11       A.  No, because I wasn't there during that.

12       Q.  Who was communicating on behalf of Clearwater

13  and Clearwater's willingness to extend this loan?

14            MS. SIEG:  Objection.  Vague.

15  Communicating with whom?

16       A.  Yeah, I'm not sure what you're saying.

17       Q.  You have testified that you weren't sure of

18  the terms of the loan or the amount of the loan because

19  you were not here in --

20       A.  It really wasn't a loan.  It was to put

21  something in to help it keep going.

22       Q.  And by "something in," you mean --

23       A.  A certain amount.

24       Q.  -- a certain amount of money; right?  Is that

1  right?

2      A.  Yes.

3      Q.  Who was communicating on behalf of Clearwater

4  to Blackjewel what amount was available or what amount

5  it was willing to give?

6              MS. SIEG:  Objection.  Foundation.  Calls

7  for speculation.

8      A.  I'm not sure.  Evidently something come up

9  during their talks.  I wasn't there, so I don't know

10 how that came up.

11     Q.  And when you say "during their talks," whose

12 talks?

13     A.  In the court.

14     Q.  Was there anyone in court on behalf of

15 Clearwater?

16             MS. SIEG:  Objection.  Foundation.

17     A.  I wasn't there.

18     Q.  You're the manager of Clearwater; right?

19     A.  Uh-huh.

20             MS. SIEG:  Objection.

21     Q.  Do you know, as you sit here today, whether

22 any representative of Clearwater was present at the

23 court proceedings?

24             MS. SIEG:  Objection.  Asked and

 1  answered.

 2      A.   I don't know.   I wasn't there, so I don't know

 3  who all was there.

 4      Q.   How were the terms of the proposed loan being

 5  communicated to Blackjewel?

 6              MS. SIEG:   Objection.   Foundation.   Calls

 7  for speculation.

 8      A.   I don't know.

 9      Q.   Other than you, as the manager, did anyone

10  else have authority to make offers on behalf of

11  Clearwater?

12              MS. SIEG:   Objection.   Foundation.   Vague

13  as to make offers for what.

14      Q.   Other than you as the manager, did anyone else

15  have the authority to make offers of a DIP loan on

16  behalf of Clearwater?

17      A.   All I know is when I talked to my husband, he

18  was hoping and he was telling me -- I would have done

19  it in a heartbeat, and then everything froze.   That's

20  all I know.   Or locked down.

21              (Reporter interruption for

22              clarification.)

23      Q.   So, as you sit here today, do you have any

24  idea who from Clearwater Investment Holdings

1  communicated the terms of the proposed DIP loan to

2  Blackjewel?

3             MS. SIEG:  Objection.

4      A.  No.

5             MS. SIEG:  Asked and answered.

6      A.  No, I don't, and I don't know how that came

7  up.

8      Q.  Did anyone else other than you have authority

9  to make those offers on behalf of Clearwater?

10            MS. SIEG:  Objection.  Asked and

11  answered.

12            MR. KANE:  I will object to the

13  foundation and the characterization.

14            MS. SIEG:  Likewise.

15     Q.  You can answer.

16     A.  I don't -- I mean, I don't know who all was

17  there.  There could have been someone there that maybe

18  could, but I wasn't there.

19     Q.  Okay.  Mrs. Hoops, I'm not asking who was

20  there at the hearing.

21     A.  I know, but to give authority --

22     Q.  I'm asking --

23     A.  -- to do it.  I would have.

24     Q.  Okay.  You as the manager of Clearwater --

1 because he was late getting here.

2     Q.  And was that in a meeting with counsel?

3     A.  Yes.

4     Q.  All right.  I don't want to know anything

5 about the substance of that meeting.

6     Other than the meeting with counsel, did you have

7 discussions with Brent Walls regarding the depositions?

8     A.  No.

9     Q.  Anyone else?

10           MS. SIEG:  Objection.  Vague.

11     Q.  That you spoke to regarding your deposition

12 today?

13     A.  Like my husband?

14     Q.  Did you speak about the substance of today's

15 deposition with your husband?

16     A.  No, because I didn't know what we were -- what

17 it was going to be about, I mean, exactly, you know.  I

18 don't know.

19     Q.  Did any of the documents that you have

20 reviewed today -- do any of those cause you to question

21 Mr. Walls' ability as Clearwater's CFO?

22     A.  No.

23           MS. SIEG:  Objection to the form of the

24 question, but you can answer.

BLACKJEWEL, LLC, et al. v.
UNITED BANK

PATRICIA HOOPS
October 12, 2021

1      A.   No.

2      Q.   Do any of the documents cause you to question

3 the trustworthiness of Mr. Walls as a CFO?

4           MS. SIEG:   Same objection.   You can

5 answer.

6      A.   No.

7           MS. BUNN:   All right.   I don't have any

8 further questions.   Thank you, Mrs. Hoops.

9           THE DEPONENT:   Thank you.

10           MR. KANE:   I am going to have some

11 questions for you, Mrs. Hoops, but I'm going to take a

12 break so I can go to the restroom before we start.   I

13 hope not to be too long, but when lawyers say that --

14           THE DEPONENT:   I know.

15           MR. KANE:   -- put an asterisk by it.

16           MS. BUNN:   I jinxed myself.   Sorry.

17           THE VIDEOGRAPHER:   The time is 3:52.

18 We're off the record.

19           (Off the record.)

20           THE VIDEOGRAPHER:   The time is 3:57 p.m.

21 We are on the record.

22 BY MS. BUNN:

23      Q.   All right, Mrs. Hoops.   Just one more question

24 to go back to.   What documents did you review in