BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

**Dated: September 2nd, 2022**

<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 3:19-bk-30289 |
| | ) | |
| Blackjewel L.L.C., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Blackjewel, L.L.C., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 20-ap-03007 |
| | ) | |
| United Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION PARTIALLY GRANTING
UNITED BANK'S MOTION TO EXCLUDE TESTIMONY**

This adversary proceeding is before the Court on United Bank's ("Defendant") *Motion to Exclude Trust's Expert.* ECF No. 134 ("Expert Motion"). Defendant moves to exclude the Blackjewel Liquidation Trust's ("Plaintiff") expert, John Weiss ("Weiss"),

1

from offering expert testimony.  Defendant asserts that (1) Weiss is not qualified to offer testimony regarding purported damages, and (2) his opinions are neither based on sufficient data nor the product of reliable principles and methods.  For the reasons set forth herein, the Court finds that Weiss is qualified to offer expert testimony, but his opinions on damages are not based on any reliable methodology and will be excluded, subject to an opportunity to file an amended report.

## I.   Jurisdiction and Authority

The Court has jurisdiction over the subject matter of this proceeding under 28 U.S.C. § 1334.  Under 28 U.S.C. § 155(a), the Honorable Roger L. Gregory, Chief Judge of the United States Court of Appeals for the Fourth Circuit, assigned and designated Benjamin A. Kahn, United States Bankruptcy Judge, to this Court and to the captioned, jointly administered cases, together with all associated adversary proceedings.  Case No. 19-302891, ECF No. 2011.  Thereafter, the Honorable Joseph R. Goodwin entered an Order referring these cases and all related proceedings to the above signed as contemplated by the order entered by the Honorable Roger L. Gregory and under 28 U.S.C. § 157.  ECF No. 2014.  The parties consented to the Court's determining the matters set forth herein, and this Court has constitutional authority to enter final judgment.  See Wellness Int'l. Network, Ltd. v. Sharif, 575 U.S. 665, 684 (2015); and Wiswall v. Campbell, 93 U.S. 347, 350-51

(1876).  Venue of these cases and this proceeding is proper
pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  Procedural Background

Debtors[1] filed a complaint on June 1, 2020, alleging, among
other things, that Defendant improperly interfered with its
emergency debtor in possession ("DIP") financing efforts.
Specifically, Debtors alleged that Defendant improperly interfered
with Debtors' proposed DIP financing from Clearwater Investment
Holdings, and that the interference led to layoffs and a disorderly
liquidation of many of its assets, lost proceeds, profits, and
damages.  Debtors alleged four different claims for relief: (1)
Tortious Interference with Business Relations, (2) Aiding and
Abetting Breach of Fiduciary Duty and Tortious Conduct, (3) Unjust
Enrichment, and (4) Equitable Subordination of Defendant's Proof
of Claim.

At the request of the parties, the Court modified the
scheduling orders in this case multiple times.  As of the time of
the Motion, the applicable scheduling order requires Plaintiff to
have made initial expert disclosures by August 31, 2021, and

---

[1] The Debtors in these chapter 11 cases and the last four digits of each
Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C.
(0823) ("Blackjewel"); Blackjewel Holdings L.L.C. (4745); Revelation Energy
Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation
Energy, LLC (4605) ("Revelation"); Dominion Coal Corporation (2957); Harold
Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain
Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River
Coal LLC (2213).  The headquarters for each of the Debtors is located at PO
Box 1010, Scott Depot, WV 25560.

Defendant by September 14, 2021.  ECF Nos. 75 & 103.  The deadline
to have filed dispositive motions was November 30, 2021.  ECF No.
75.  Plaintiff's expert disclosures list Weiss as the only expert
to testify and state that he will testify "regarding the cash
consideration obtained during the forced liquidation of selected
assets of the Blackjewel LLC estate, Coal and Mineral Valuation,
and  other  opinions  (including  reasonable  inferences  arising
therefrom) and subject matter referenced in Mr. Weiss' report[.]"
ECF No. 134, Ex. 1, at p. 3.  His report is attached to the
disclosure and makes ten conclusions, along with listing various
value metrics, and over 200 documents that Weiss was provided or
relied upon.  ECF No. 134, Ex. 1, at pp. 8-37 ("Expert Report").

On November 30, 2021, Defendant filed the Expert Motion, a
*Motion to Exclude Trust's Untimely Disclosed Fact and Expert
Witnesses*, ECF No. 135 ("Witness Motion"), and a *Motion for Summary
Judgment*, ECF No. 136.  Plaintiff filed its own *Motion for Partial
Summary Judgment as to Liability on Count One for Tortious
Interference*.  ECF No. 138.

The Expert Motion asks the Court to exclude Weiss's testimony
on three grounds: Weiss is not qualified, his opinion is not
reliable because the financial data on which it is based is
unreliable, and he used improper methods in reaching his
conclusions.  ECF No. 134.  Plaintiff filed an *Opposition to
Defendant's Motion to Exclude Trust's Expert* on December 21, 2021,

4

arguing that Weiss is a qualified expert who can "opine on the bids and consideration that the Debtors would have received", that Weiss may properly rely on financial data from the company, and that Weiss may properly rely on his knowledge and experience in determining the range of prices that Debtors would have received. ECF No. 150, at pp. 3-4.  Plaintiff attached a *Declaration of John L. Weiss* that explains his report and decisions in further detail. ECF No. 150-1 ("Weiss Affidavit").

Defendant filed its *Reply to Opposition to Exclude Trust's Expert*.  ECF No. 151 ("Reply").  Defendant's Reply argues that the new Affidavit contradicts Weiss' testimony and the attached declaration is inappropriate because it originates from David Beckman, a previously undisclosed expert who is supporting the underlying financial data used by Weiss.  Id.  Defendant argues that this is a prohibited "'ambush' approach to rehabilitating an expert subjected to a Daubert motion" and violates Defendant's right to due process.  Id., at p. 1.

### III. Burden of Proof[2]

"A trial court has discretion to conduct the reliability and helpfulness analysis that Daubert and [Fed. R. Evid.] 702 require in the context of a summary judgment motion, and to exclude expert testimony found wanting from its consideration in ruling on the

---

[2] The Federal Rules of Evidence are made applicable to this case under Fed. R. Bankr. P. 9017.  Federal Rule of Civil Procedure Rule 56 is made applicable to this case under Fed. R. Bankr. P. 7056.

motion." 4 Weinstein's Federal Evidence § 702.05(4) (2022) (citing

Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993));

see United States v. Parks, 849 F. App'x 400, 403-04 (4th Cir.

2021). On the other hand, a trial court may also decide to "credit

proffered expert testimony at the summary judgment stage on the

basis of its reliability assessment, and either to deny summary

judgment on the ground that the testimony presents a genuine issue

of material fact," or the court may "grant summary judgment on the

basis of reliable and undisputed expert testimony." 4 Weinstein's

Federal Evidence § 702.05(4); see Crummett v. Bunn-O-Matic Corp.,

No. 3:21cv120, 2021 U.S. Dist. LEXIS 227088 (E.D. Va. Nov. 24,

2021) (conducting Daubert analysis of expert testimony at the

summary judgment stage); Cooper v. Smith & Nephew, Inc., 259 F.3d

194 (4th Cir. 2001) (affirming the decision to dismiss claims at

the summary judgment stage based on a Daubert analysis).

The Daubert analysis is no different at the summary judgment

stage than at trial. Small v. WellDyne, Inc., 927 F.3d 169, 176-

77 (4th Cir. 2019) (stating that district court appropriately

conducted a Daubert analysis in a remand for summary judgment);

Peters-Martin v. Navistar Int'l Transp. Corp., 410 F. App'x 612,

617 (4th Cir. 2011) (affirming district court decision to exclude

expert testimony from summary judgment motions based on Daubert

analysis); 4 Weinstein's Federal Evidence § 702.05(4) ("[I]f the

trial court is going to hold an in limine evidentiary hearing in

any event, it should make little difference whether the hearing occurs at the summary judgment stage or during the course of ordinary pretrial proceedings.").

"The trial court's analysis under the standards listed in Rule 702 must focus on the admissibility of the proffered testimony, not its correctness."  4 Weinstein's Federal Evidence § 702.05(2)(a); see also Md. Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780, 783 (4th Cir. 1998) (noting that "[a]ll Daubert demands is that the trial judge make a 'preliminary assessment' of whether the proffered testimony is both reliable . . . and helpful").

The proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of proof.  Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).  Although not absent, the concerns raised by Daubert and admissibility of expert testimony are diminished in a bench trial.  See, e.g., United States v. Wood, 741 F.3d 417, 425 (4th Cir. 2013) (quoting United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005))("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); LaRosa v. Pecora, No. 1:07CV78, 2009 U.S. Dist. LEXIS 106627, at *9 (N.D. W. Va. Mar. 2, 2009) (quoting Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000) ("[M]ost of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of

a jury."); <u>City of Huntington v. AmerisourceBergen Drug Corp.</u>, No. 3:17-01362, 2021 U.S. Dist. LEXIS 77078, at *13-14 (S.D. W.Va. Apr. 22, 2021) (quoting <u>Kansas City S. Ry. . Co. v. SNY Island Levee Drainage Dist.</u>, 831 F.3d 892, 900 (7th Cir. 2016) ("Where a trial judge conducts a bench trial, the judge need not conduct a <u>Daubert</u> (or Rule 702) analysis before presentation of the evidence, even though he must determine admissibility at some point.").[3]

## IV.   Findings of Fact and Conclusions of Law

Defendant makes three arguments in support of its motion to exclude Weiss' testimony.   First, Weiss does not have the appropriate expertise; second, Weiss relies on unverified information; and third, Weiss did not employ any reliable methodology.

## A.   Weiss is qualified to provide expert testimony.

A qualified expert may give testimony if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.   As the Fourth Circuit has explained:

---

[3] Having denied Plaintiff's motion for partial summary judgment with respect to causation and damages, the Court need not address the admissibility of the Weiss opinions on those issues at this time.   Nevertheless, the Court reaches these issues because Defendant has raised them in connection with summary judgment, the issues will remain for purposes of trial, and deferring ruling would unnecessarily delay these proceedings further.

Under Rule 702, a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable.  In performing this gatekeeping role, a district court is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule.  Our Court has explained that whether testimony assist[s] the trier of fact is the touchstone of Rule 702.  Even if an expert witness's opinion is admissible under Rule 702, Rule 403 permits the district court to exclude relevant opinion testimony if its probative value is substantially outweighed by a danger of . . . unfair prejudice.

Parks, 849 F. App'x at403-04 (internal citations and quotations omitted).  "While there is inevitably some overlap among the basic requirements -- qualification, reliability, and helpfulness -- they remain distinct concepts and the courts must take care not to conflate them."   United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).

"Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness."  Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000).  "The Fourth Circuit has noted that, under [Rule 702], 'an expert must have either knowledge, skill, experience, training, or education. These are disjunctive; an expert can qualify to testify on any one of the grounds.'"   Toth v. A&R Logistics, Inc., No. 2:16-cv-09793, 2018 U.S. Dist. LEXIS 99438, at *15 n.5 (S.D. W. Va. June 12, 2018) (quoting Cooper v. Lab. Corp. of Am. Holdings, Inc., 150 F.3d 376, 380-81 (4th Cir. 1998)).  "An imperfect fit between the expert's

knowledge and experience and the issues before the court impacts the weight given to the expert's testimony, not its admissibility." Benedict v. Hankook Tire Co., 290 F. Supp. 3d 488, 497 (E.D. Va. 2018) (quoting Radiance Found., Inc. v. NAACP, 27 F. Supp. 3d 671, 674 (D.D. Va. 2013)).

Weiss is the Vice President of John T. Boyd Company, a coal mining consulting firm, and has worked at John T. Boyd Company for more than thirty-one years. ECF No. 134, Ex. 1, at p. 20. Weiss is a mining engineer and deals with the management and evaluation of domestic and international mining operations. ECF No. 134, at 2. Weiss "routinely provide[s] technical and financial advisory services to participants in the industry as it relates to coal reserves, operating mines, coal processing and handling facilities, and mining companies." ECF No. 134, Ex. 1, at p. 20. Weiss has "been the principal author of Mineral Expert Reports that are filed with the Securities and Exchange Commission (or international equivalents) for valuation of coal reserves and coal mining entities." Id.

Weiss has handled over 130 projects that involved valuing coal mining assets in Central Appalachia and the Powder River Basin. ECF No. 150-1, at ¶ 4.[4] Out of those 130 valuation

---

[4] The Court notes that in its Reply, Defendant directs the Court's attention to the "232-page deposition transcript [that] was attached to United Bank's Motion," with a footnote indicating ECF No. 134. The attached deposition transcript contained excerpts, only.

projects, at least seventy of them were for businesses looking to acquire coal mining assets.  Id.  Weiss was engaged to advise potential purchasers on the price they should set for their bids. Id.  Further, of the seventy acquisition engagements, about one-third of them were in the context of a constrained sale process. Id.

---

Defendant argues that Weiss' later attached affidavit is inconsistent with his deposition and an impermissible revision of his disclosures.  ECF No. 151, at p. 1.  Defendant provides the following question and answer: "Q: Have you ever been directly involved in coal sales? … A: No[;]" ECF No. 151, at p. 2 (citing ECF No. 134, Exhibit 2 at 18.)  To the extent the excerpt included in the Motion is complete, the entirety of Weiss' answer was:

> Q. Have you ever been directly involved in coal sales or marketing?
>
> A. Could you reask the question or –
>
> Q. Let me break it down.  Have you ever been directly involved in coal sales?
>
> A. As in me selling coal?
>
> Q. Correct.
>
> A. No.
>
> Q. Selling it on your own behalf or on behalf of your employer. Have you ever been involved in coal sales?
>
> A. I've been involved in any number of sales, transactions, discussions, working with buyers, sellers, brokers.  I myself have not sold coal.

ECF No. 134-2, pp. 5-6.  Read in context, there are no inconsistencies between the Affidavit and Deposition.  Therefore, the Court will consider the Affidavit for qualification purposes.  See SMD Software, Inc. v. EMove, Inc., 945 F. Supp. 2d 628, 649 (E.D.N.C. 2013)(expanding on expertise does not constitute new opinions that necessitate excluding from the court's review)(citing Gaynor v. OB/GYN Specialists, Ltd., 51 F. Supp. 2d 718, 725 (W.D. Va. 1999); Raytheon Aircraft Co. v. United States, No. 05-2328-JWL, 2008 U.S. Dist. LEXIS 17201, *3-4 (D. Kan. Mar. 4, 2008)).

Weiss has had other engagements that require valuation of coal mining assets. <u>Id.</u>, at ¶ 5. Approximately two-thirds of Weiss' billable time in the past five years was on projects that require financial analysis, and over half of Weiss' time during that period has been spent on valuations and appraisals. <u>Id.</u> at ¶ 6.

Defendant argues that Weiss' credentials are in question because he lacks a background in finance or economic theory. However, training and education are only two of the five grounds that an expert can qualify under. Weiss has extensive experience in assessing mining operations and providing financial advisory services to those in the mining industry. The extent to which he does not have experience in specific financial methods is a matter that may affect the weight of Weiss' opinion, but not his qualifications. He has the experience and knowledge necessary to testify to the lost profits in the sale process, and the Motion is denied as to Weiss' qualifications.

**B.   The data on which Weiss based his opinions is sufficiently reliable for purposes of <u>Daubert</u>, but his methodology is not.**

Although the information on which Weiss relied is sufficient for purposes of <u>Daubert</u>, the challenge to Weiss' methodology has merit.

1. **Weiss appropriately relied on FTI's calculations when reaching his conclusions.**

Under Fed. R. Evid. 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Thus, Rule 703 authorizes experts to base their opinions upon inadmissible data if they would reasonably rely upon such data in reaching conclusions in their respective fields.  See Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 144 (4th Cir. 1994).  When there is a factual dispute over the issue of reliance, the court must determine whether such reliance is justified.  Fed. R. Evid. 104(a); 1 Weinstein's Evidence Manual § 13.03[2][c] (2021).

To support the reliance, the proponent must show that experts in the field would act upon the information relied upon.  Fed. R. Evid. 703.  Prior to Daubert, there was a split between Courts on whether the court may rely on experts to testify to the trade practice or the court must undertake an independent assessment of the reliability of the materials on which the expert relied.  1 Weinstein's Evidence Manual § 13.03[2][c] (2021).  Now, in light of Daubert, Courts are beginning to "independently evaluate [] the reasonableness of reliance on the data underlying an expert's

opinion[.]" <u>Id.</u>; <u>see</u> <u>Rand v. Parametric Tech. Corp.</u>, No. 03-CV-11046-MEL, 2005 U.S. Dist. LEXIS 47964 (D. Mass. Oct. 19, 2005)(finding an expert's opinion inadmissible where the expert unreasonably relied on forecasts without any investigation).

"[C]ompany records and statements by company personnel are types of data reasonably relied upon by accountants, and opinions based on those types of information are typically admissible under Rule 703." <u>Sales v. E.I. Dupont De Nemours & Co.</u>, No. 89-4571, 1992 U.S. Dist. LEXIS 19709, at *5 (E.D. La. Dec. 18, 1992) (citing <u>Int'l Adhesive Coating Co. v. Bolton Emerson Int'l</u>, 851 F.2d 540, 544-45 (1st Cir. 1988)(accountant may provide expert opinion based on company records and interviews with employees); <u>United States v. Affleck</u>, 776 F.2d 1451, 1456-58 (10th Cir. 1985) (accountant may testify as to solvency of corporation based on what he had been told by corporation's employees); <u>Bauman v. Centex Corp.</u>, 611 F.2d 1115, 1120 (5th Cir. 1980)(accountant may rely on files and financial statements of corporation)). While reliance on particular data is a question of reasonableness, after arriving at an opinion derived from reasonable reliance on underlying data, it is "[t]he burden [of] opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion." <u>Int'l Adhesive Coating</u>, 851 F.2d, at544 (citations omitted). "When the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and

14

credibility of the testimony -- a question to be resolved by the jury." Id. (citing Payton v. Abbott Labs, 780 F.2d 147, 156 (1st Cir. 1985)).

Here, Plaintiff retained Weiss to act as an expert witness to establish damages.  Weiss provided opinions on the sale prices that Debtors would have achieved in a more orderly liquidation. ECF No. 150-1, at 17-18.  Also, Weiss claimed that certain operations would have resulted in a net profit during an orderly liquidation.  Id.

 In reaching these conclusions, Weiss received or reviewed hundreds of documents.  ECF No. 134, Ex. 1, at pp. 25-32.  The principal documents he relied upon were

> (1) a profit and loss statement for the first quarter of 2019 showing the profit/loss results on a mine-by-mine basis for the mines in Central Appalachia that the Debtors actually sold in the first sale process and (2) a pro forma financial statement that, like the first, was limited to the mines in Central Appalachia that the Debtors actually sold.

ECF No. 150-1, ¶ 8 (internal citation omitted); see also ECF No. 134-2, p. 16-17.  The Second document "showed financial performance on a mine-by-mine basis using 2018's coal production numbers but with coal pricing that the Debtors' achieved in the first quarter 2019[.]" ECF No. 150-1, ¶ 8 (internal citation omitted).  Both of these documents were prepared by FTI Consulting, Inc., ("FTI"). Id., at ¶ 9.  Debtors retained FTI to provide Debtors a Chief Restructuring Officer and interim Chief Executive Officer and

certain other professionals to assist the CRO and CEO in their duties.  Case No. 19-30289, ECF No. 702.  Weiss had videoconference calls with FTI to discuss how they had prepared the reports and to confirm that the approach to presenting the information was "reasonable" and that the reports are "the type of documents upon which a bidder for the Debtors' assets would base its bid."  ECF No. 150-1, ¶ 9.

Weiss relied on financial documents depicting the profit and losses in 2018, and documents indicating the coal prices as prepared by FTI.  Mr. David Beckman was the Chief Restructuring Officer of Debtors prior to confirmation of their plan, and David Beckman relied on FTI's staff during his tenure with Plaintiff.  These reports from Debtors' financial consulting firm, a firm that was actively managing and directing Plaintiff's operations, fall into the category of information on which professionals in similar professions reasonably rely.  Any errors in the underlying reports can be left to cross-examination and affect the weight of Weiss' testimony, rather than its admissibility.  Therefore, the Motion is denied to the extent that it is based on Weiss' reliance on the underlying financial reports.

**2.  Weiss' damages conclusions are inadmissible because the method of connecting the data to the conclusions in question is based solely on the ipse dixit of the proposed expert.**

Although Weiss is qualified to testify and his opinion is based on sufficiently reliable data, he did not engage in

16

acceptable methodology reaching his damages conclusions.  Expert testimony is admissible only if the witness has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702; 4 Weinstein's Federal Evidence § 702.05[2][a] (2021).

In Daubert, the Supreme Court provided a non-exhaustive list of five factors to consider when evaluating proffered expert testimony: (1) "whether the theory or technique . . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," (4) "the existence and maintenance of standards controlling the technique's operation," and (5) whether the technique or theory has gained "general acceptance." Daubert, 509 U.S. 579.  The Daubert factors are "neither definitive, nor exhaustive . . . [and] particular factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 200-201 (4th Cir. 2001) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999)).

"For the proffered evidence to be sufficiently reliable it 'must be derived using scientific or other valid methods' and not based on mere 'belief of speculation.'" Vertellus Holdings LLC v. W.R. Grace & Co.-Conn., No. SAG-18-3298, 2021 U.S. Dist. LEXIS 164153, at *18 (D. Md. Aug. 11, 2021) (quoting Casey v. Geek Squad

Subsidiary Best Buy Stores, L.P., 823 F. Supp. 2d 334, 340 (D. Md.
2011) (first quoting Oglesby v. Gen. Motors Corp., 190 F.3d 244,
250 (4th Cir. 1999); then quoting Bryte ex rel. Bryte v. Am.
Household, Inc., 429 F.3d 469, 477 (4th Cir. 2005))). "The court's
analysis focuses on experts' methods, not their conclusions, but
an expert opinion that relies on 'assumptions which are speculative
and not supported by the record,' is inadmissible." Vertellus,
2021 U.S. Dist. LEXIS at *18 (quoting Tyger Const. Co., 29 F.3d at
142). "[N]othing in either Daubert or the Federal Rules of
Evidence requires a district court to admit opinion evidence that
is connected to existing data only by the ipse dixit of the
expert."[5] Kumho Tire, 526 U.S. at 157 (quoting General Elec. Co.
v. Joiner, 522 U.S. 136, 146 (1997)).

In this case, Plaintiff's expert disclosures under Fed. R.
Civ. P. 26(a)(2), made applicable by Bankruptcy Rule 7026,
indicated that Weiss "may be called to testify regarding the cash
consideration obtained during the forced liquidation of selected
assets of the Blackjewel LLC estate, Coal and Mineral Valuation,
and other opinions (including reasonable inferences arising
therefrom) and subject matter referenced in Weiss' report[.]" ECF
No. 134, Ex. 1, at p. 3. Weiss' Expert Report makes 10 conclusions.

---

[5] Ipse dixit: " Something asserted but not proved . . . • The phrase is commonly
used in court decisions analyzing the admissibility of expert testimony. A court
may reject expert-opinion evidence that is connected to existing data only by
the expert's 'ipse dixit.'" Black's Law Dictionary (11th ed 2019).

Id., at pp. 17-19.  Of those 10 conclusions, Defendant challenges

the following five:

> Conclusion #1:  "[A] number of the Blackjewel operations
> would have generated a combined positive cash flow
> ranging from $3 million to $8 million prior to the
> conclusion of an Orderly Liquidation had there been
> liquidity."
>
> Conclusion #2:   "Buyers would have prepared Income
> Analyses of these properties and applied their own
> adjustments to tonnage, price, cost, and mine life,"
> which "would have generated cash consideration of
> between double and triple," and yielded "an additional
> $14 million to $28 million in cash consideration."
>
> Conclusion #3:  "Had there been any Orderly Liquidation
> where the seller had more flexibility and time to
> negotiate with multiple competing bidders  .  .  .
> additional royalty payments would have been procured .
> .  .  valued in the range of 25% to 50% greater  .  .  .
> which equates to approximately $3.5 million to $7.0
> million in additional consideration."
>
> Conclusion #4:   "Although I do not anticipate that
> multiples of actual cash generation would have been
> achieved under a more favorable auction format it is
> reasonable that the presence of alternative bidders in
> a more appropriate selling process . . . would have added
> 10% to 20% to the cash component of the transaction ($5.4
> million to $10.7 million)."
>
> Conclusion #5:  "The cash generation under an orderly
> liquidation process would have increased by $25.9
> million to $53.7 million."
>
> ECF No. 134, at pp. 3-8.

The Court has reviewed Weiss' Report and the other documents

presented to determine whether it can rely on Weiss' methods in

reaching these conclusions.  In the "Coal and Mineral Valuation"

section of his report, Weiss details three "generally recognized

approaches to determining the value of coal and mineral properties," the cost approach or replacement cost approach, the comparable sales approach, and the income approach. ECF No. 134, Ex. 1, at p. 13. Weiss selects the "Operating Income Analysis" to be the "logical and appropriate valuation approach for the majority of Blackjewel Holdings" and claimed that a "prudent buyer would have used such an approach had the Blackjewel assets been sold in an Orderly Liquidation process[.]" Id., at p. 15-16. This approach "uses discounted cash flow analyses of the estimated cash flows of a project to determine the net present value of the operator's interest in the property." Id., at p. 15.

In a later section, Weiss describes and lists the earnings before interest, taxes, depreciation, depletion, and amortization ("EBITDA") for certain mines in 2018, and that the EBITDA was negative $89.1 million. Id., at p. 16-17. After updating for certain assumptions, and after limiting the calculation to those properties sold in the liquidation, Weiss reports a negative EBITDA of $68.2 million. Id., at p. 17. Weiss purports to have extrapolated from these reports the EBITDA for the first quarter of 2019 by applying "a blended average of Blackjewel's metallurgical and thermal realizations," or prices, to the previous 2018 tonnage produced by Blackjewel. Id. He claims this resulted in a positive EBITDA of $8.3 million. Id.

While the expert report indicates Weiss' intention to use an "Operating Income Analysis" to reach an ultimate valuation, Weiss did not follow any methodology in applying this approach. Instead, Weiss concedes that his conclusions are based solely on his experience and expertise. ECF No. 134, Ex. 2, at pp. 26, 33-38.[6] This is precisely the type of ipse dixit prohibited by the Court in Kumho Tire. 526 U.S. at 157. Plaintiff concedes that Weiss did not perform a formal valuation. ECF No. 150, at p. 17 ("Weiss did not perform a formal valuation, but his opinions were informed by decades of experience with how bidders would have viewed the mines sold from an income valuation approach.")

The Report, the Weiss Affidavit, and Weiss' deposition testimony fail to connect the operating income standard of valuation with the underlying facts and his ultimate valuation

---

[6] Weiss concedes this in his deposition:

> Q. What calculations or mathematical formulas, if any, did you use to calculate the range of 10 to 20 percent?
>
> A. There is no application or calculation or formula. Again, this is a professional opinion of an industry professional to a reasonable degree of industry and engineering certainty based on my training, education and experience.

...

> Q. What supporting calculation or mathematical formulas did you use to calculate the range of 5.4 million to 10.7 million?
>
> A. Once again, I will say I relied solely upon my professional industry experience, providing a professional opinion based on engineering and industry certainty. And there wouldn't be anything else that would be used to replicate it.

ECF No. 134, Ex. 2, at pp. 37-39.

conclusions.    There  similarly  is  no  offered  mathematical
connection or methodology between his conclusions as to EBIDTA and
lost income.  Instead, Weiss solely relies on his experience and
expertise.  While it is not necessary for an expert to use all
data or account for all methods, and experts can rely on financial
information to reach conclusions, there is nothing in the above
five conclusions that connects the data or the Operating Income
Analysis on  which  Weiss  purports  to  rely  to  his  ultimate
conclusions.  Weiss opines that the best valuation method is based
on cash flow, purports to make EBITDA calculations, but then
concedes that  he  did  not  make  any  calculations  using  those
methodologies or  otherwise  in  determining  the  projected  sales
prices or other components of Plaintiff's putative damages.

The failure to connect his opinions to any methodology is not
something that can be rehabilitated by cross examination at trial.
Without a method for reaching these conclusions, Defendant is left
with pure conjecture and belief, which is insufficient to support
the opinion even if such opinion is purportedly based on years of
experience and expertise.  Defendant cannot identify or discern
which information is pertinent to the price variations and how to
quantify that information.  Even where the standard for assessing
admissibility is relaxed, Plaintiff has not met its burden in
showing by a preponderance of proof that these conclusions reach

any level of reliability beyond speculation by an expert and can be used by a trier of fact.

Plaintiff relies on several cases to support its claim that "experience and knowledge" is sufficient to support the claim for damages and that courts will accept flat percentages when determining the extent of damages in liquidation cases. ECF No. 150, at pp. 14-15 (citing Chorches v. Ogden (In re Bolin & Co.), 437 B.R. 731 (D. Conn. 2010); ESL Invs., Inc. v. Sears Holdings Corp. (In re Sears Holdings Corp.), 621 B.R. 563, 568-69 (S.D.N.Y. 2020); In re McMartin Indus. Inc., 62 B.R. 718, 720 (Bankr. D. Neb. 1986)). The cases cited by Plaintiff are unavailing. In Ogden and Sears Holdings Corp., the expert opinions were based on disclosed methodologies and discernable economic principles.

It is true that courts will often rely on the experts' calculations and opinions of value when determining the extent of damages in tortious interference cases. Ogden, 437 B.R. at 763. In that case, the court states that it is appropriate to consider "less quantitative sources, such as the testimony by [owner of debtor business] and the opinions of both sides' experts" to "tally the extent of the harm," in addition to examining evidence of the debtor's accounts. Id.

However, the expert testimony in Ogden as to damages concerned the going value of the debtor business at the time of closing. The experts "proposed two premises of value for [debtor business]:

the value of the store's income and the value of its assets." Id.
Just as Weiss purports to do, these experts relied on the company's
"internal financial records" as well as their experience and
knowledge. Id. In contrast to Weiss's lack of methodology, the
experts in Ogden provided mathematical calculations applying
quantifiable "premises of value" to the data they collected. Id.
The calculations involved accepted economic principles such as
discounted value of future income, projected growth, risk of
insolvency, value of net assets and liabilities, and future
viability. Id. The court determined that these methodologies
were sufficient for it to evaluate when deciding the weight to
assign to the competing testimony. Weiss provides no "premises of
value" underlying his valuations in the five contested
conclusions; he only offers experience and expertise, which is
insufficient.

Plaintiff has not established that Weiss's valuation and
damages opinions are based on any reliable methodology, and he in
fact conceded that his conclusions are based solely on his *ipse
dixit*. Therefore, the Court will grant Defendant's Motion as to
its conclusions regarding valuation, damages caused by the forced
liquidation, and lost income.

### V.   Conclusion

**IT IS THEREFORE ORDERED, ADJUDGED, and DECREED** that Weiss is qualified to offer expert testimony, but the motion is granted to the extent set forth herein.

[END OF DOCUMENT]