BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

**Dated: September 2nd, 2022**

<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 3:19-bk-30289 |
| | ) | |
| Blackjewel L.L.C., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| Blackjewel, L.L.C., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 20-ap-03007 |
| | ) | |
| United Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT IN PART**

This case is before the Court on *Motion for Summary Judgment*,
ECF No. 136 ("Motion for Summary Judgment"), filed by United Bank
("Defendant"), and *Motion for Partial Summary Judgment as to
Liability on Count One for Tortious Interference*, ECF No. 138
("Motion for Partial Summary Judgment"), filed by the Blackjewel

Liquidation Trust ("Plaintiff").  For the reasons stated herein, the Court will deny Defendant's Motion for Summary Judgment, and grant Plaintiff's Motion for Partial Summary Judgment in part.

## I. Jurisdiction And Authority

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  Counts I through III, defined below, are related to this bankruptcy case, and have a close nexus to the implementation, consummation, execution, and administration of Debtors' confirmed plan.  See Valley Historic Ltd. P'ship v. Bank of New York, 486 F.3d 831, 836-37 (4th Cir. 2007).[1]  Count IV of the Complaint is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).   Under 28 U.S.C. § 155(a), the Honorable Roger L. Gregory, Chief Judge of the United States Court of Appeals for the Fourth Circuit, assigned and designated Benjamin A. Kahn, United States Bankruptcy Judge, to this Court and to the captioned, jointly administered cases, together with all associated adversary proceedings.  Case No. 19-30289l, ECF No. 2011.  Thereafter, the Honorable Joseph R. Goodwin entered an Order referring these cases and all related proceedings to the above signed as contemplated by the order entered by the Honorable Roger L. Gregory and under 28 U.S.C. § 157.  ECF No. 2014.  The parties consented to the Court determining the matters

---

[1] See Section II, infra.

set forth herein, and this Court has constitutional authority to enter final judgment.  See Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 684 (2015); Wiswall v. Campbell, 93 U.S. 347, 350-51 (1876) (as to Plaintiff's third claim for relief).  Venue of these cases and the cross-motions for summary judgment are proper under 28 U.S.C. §§ 1408 and 1409.

## II. Procedural Background

Debtors[2] commenced this adversary proceeding by filing a complaint on June 1, 2020.  ECF No. 1.  Debtors alleged four different counts: (1) Tortious Interference with Business Relations ("Count I"), (2) Aiding and Abetting Breach of Fiduciary Duty and Tortious Conduct ("Count II"), (3) Unjust Enrichment ("Count III"), and (4) Equitable Subordination of Defendant's Proof of Claim ("Count IV").  Id.

On July 7, 2020, Defendant filed a *Motion to Dismiss Adversary Proceeding*, ECF No. 11 ("Motion to Dismiss"), and *Memorandum of Law in Support of Motion to Dismiss*, ECF No. 12 ("Memorandum for Motion to Dismiss").  On September 21, 2020, this Court denied the Motion to Dismiss regarding Count I and Count IV.  ECF No. 26.

---

[2] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823) ("Blackjewel"); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605) ("Revelation"); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213).  The headquarters for each of the Debtors is located at PO Box 1010, Scott Depot, WV 25560.

For Count II, the Motion to Dismiss was granted.  The Court required Debtors to file a more definite statement as to Count III.  Id.

On September 24, 2020, Debtors filed *First Amended Complaint*. ECF No. 28 ("First Amended Complaint").  Debtors alleged four counts: (1) Tortious Interference with Business Relations ("Count I"), (2) Aiding and Abetting Breach of Fiduciary Duty and Tortious Conduct ("Count II"), (3) Unjust Enrichment ("Count III"), and (4) Equitable Subordination of Defendant's Proofs of Claim ("Count IV").  Id.  On October 8, 2020, Defendant filed *Partial Motion to Dismiss Plaintiffs' Amended Complaint*, ECF No. 35 ("Partial Motion to Dismiss"), requesting that the Court dismiss Counts II and III. On October 21, 2020, Debtors filed *Response to the Partial Motion to Dismiss*.  ECF No. 39.  The Court entered an Order denying the Partial Motion to Dismiss on December 21, 2020.  ECF No. 50.  On January 8, 2021, Defendant filed its *Answer to First Amended Complaint*.  ECF No. 54.

The Court confirmed Debtors' plan, ECF No. 2499 (the "Plan"), on March 22, 2021.  Bankr. Case No. 19-30289, ECF No. 3147 (the "Confirmation Order").  Article 9 of the Plan created a Liquidation Trust that was vested with "all right, title and interest in all of the Liquidation Trust Assets, as well as the rights and powers of each Debtor in such Liquidation Trust Assets . . . free and clear of all Claims and Interests for the benefit of the

Liquidation Trust Beneficiaries." Plan, pp. 28-29, §§ 9.2.1 and 9.3.1. Among the Liquidation Trust Assets were the Liquidation Trust Causes of Action, which, in turn, included the Causes of Action in the Litigation Proceedings. Id. at p. 8, §§ 1.1.56 and 1.158. The Litigation Proceedings include Plaintiff's claims in this adversary proceeding. Id. at p. 8, § 1.1.62 and p. 12, § 1.1.96. The Confirmation Order is a final order. Pursuant to the Plan, the Liquidation Trust, as managed by the Liquidation Trustee, has been substituted as Plaintiff in this action. Id. at p. 8, § 1.1.61 and pp. 29-30, § 9.5. The terms of the Plan retained jurisdiction for this Court to hear and determine the Liquidation Trust Causes of Action. Id. at p. 44, § 13.1.9. The Liquidation Trust Causes of Action are the primary means of implementing the Plan, and the inclusion of the Liquidation Trust Causes of Action among the Liquidation Trust Assets was instrumental in garnering creditor support for confirmation.

On November 30, 2021, Defendant filed the *Motion for Summary Judgment* and *Memorandum of Law in Support of Motion for Summary Judgment*. ECF No. 137 ("Memorandum of Law in Support of Motion for Summary Judgment"). Defendant argues that it is entitled to summary judgment for four reasons. First, Defendant "did not tortiously interfere with the proposed DIP Loan when it exercised a contractual right to control collateral securing the Clearwater loan" because it was justified in doing so. Id., at 12. Second,

Defendant "did not aid and abet breaches of fiduciary duty by Jeff Hoops." Id. at 19.  Third, Defendant was not unjustly enriched by the processing transactions that affected Debtors.  Id. at 24. Fourth, Plaintiff is not entitled to equitably subordinate Defendant's claims because Defendant's conduct was not wrongful nor egregious.  Id. at 26.  On December 14, 2021, Plaintiff filed a *Memorandum in Opposition to Motion for Summary Judgment of Defendant*.  ECF No. 142.  Plaintiff contends that Defendant is not entitled to summary judgment on any count.  On December 21, 2021, Defendant filed a *Reply in Support of Motion for Summary Judgment*. ECF No. 148.

Plaintiff filed a cross-motion for partial summary judgment and a memorandum in support.  ECF No. 138.  Plaintiff contends that it is entitled to summary judgment regarding Count I because there is no genuine dispute as to any material fact with respect to its claim that Defendant tortiously interfered with the business of Debtors and Defendant's actions were not justified.  On December 14, 2021, Defendant filed a *Response and Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment*.  ECF No. 141. Defendant argues that Plaintiff cannot establish the elements of tortious interference; and, even if Plaintiff could establish the prima facie elements, Defendant's interference was justified because it merely was exercising its contractual remedies under its loan documents in the event of a default.  Id. at 14.  On

December 21, 2021, Plaintiff filed *a Reply Memorandum in Support of Trust's Motion for Partial Summary Judgment.* ECF No. 149. The Court has considered the parties' filings, and the matter is ripe for determination.

### III.Facts[3]

In 2008, Jeffrey A. Hoops Sr. ("Hoops Sr.") formed Revelation and became its President and CEO. ECF No. 141, ¶ 1. Over the period between 2009 and 2014, Lime Rock Partners ("Lime Rock"), a private equity fund, became 62.5% owner of Revelation. ECF No. 137, ¶ 7. By 2017, Revelation decided to rebrand its active mines under new operating company, Blackjewel, L.L.C. ("Blackjewel") and to focus on metallurgical mining. ECF No. 141, ¶ 3; ECF No. 136, Ex. 1, p. 45, lines 2-9. Blackjewel was wholly owned by Blackjewel Holding. ECF No. 138, ¶ 2; ECF No. 141, ¶ 4. At the inception of Blackjewel Holding, Lime Rock held the same 50% ownership interest in Blackjewel Holding as it did in Revelation, but the ownership shares changed over time as Lime Rock invested more into Blackjewel, and its interest in Blackjewel eventually reached 62.5%. ECF No. 137, ¶ 9; ECF No. 138, ¶ 3; ECF No. 141, Ex. 1, pp. 173-74, 310:6-11. The remaining interest in Blackjewel Holding

---

[3] As there are cross motions for summary judgment, the Court will construe the facts in a light most favorable to the non-moving party with respect to each motion. Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 314 (2d Cir. 1981) (where there are cross motions for summary judgment, court must consider each motion "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration").

was owned by Blackjewel Investment LLC, which, in turn, was owned

by the Blackjewel Trust.  ECF No. 141, ¶ 5.[4]  Hoops Sr. became the

President and Chief Executive Officer of Blackjewel.  ECF No. 28,

¶ 5; ECF No. 54, ¶ 5.  Blackjewel "obtained its banking services

from [Defendant]" including accounts to cover payroll.  ECF No.

138, ¶ 7.  Defendant loaned money to Blackjewel under the terms of

various loan agreements including an $11 million revolving line of

credit ("Blackjewel Loan Agreement").  ECF No. 138, ¶ 8; ECF No.

141, ¶ 10.

In relevant part, section 9 of the Blackjewel Loan Agreement

defined, among other events, the following as Events of Default:

> (a)   <u>Nonpayment</u>.  Nonpayment when due of any principal,
> interest, premiums, fees, costs, or expenses due under
> the Transaction Documents, which nonpayment continues
> uncured for five (5) Business Days following notice of
> non-payment from Secured Party to the Debtor.
>
> * * *
>
> (e)   <u>Cessation of Business or Voluntary Insolvency
> Proceedings</u>.   The  (i)  cessation  of  operations  of
> Debtor's  business  as  conducted  on  the  date  of  this
> Agreement; (ii) filing by Debtor of a petition or request
> for   liquidation,   reorganization,   arrangement,
> adjudication as bankrupt, relief as a debtor, or other
> relief under the bankruptcy, insolvency, or similar laws
> of the United States of America or any state or territory
> thereof or any foreign jurisdiction now or hereafter in
> effect . . ..
>
> * * *

---

[4] In its response to Plaintiff's motion for partial summary judgment, Defendant
states that Jeremy Hoops was the trustee for Blackjewel Trust, but the cited
deposition testimony from Hoops Sr. merely states that "[h]e may have been."
ECF No. 141, Ex. 1, p. 165: 5-7.

(k) <u>Insecurity; Change</u>. Secured Party shall believe in good faith that the prospect of payment of all, or any part, of the Indebtedness or performance of Debtor's obligations under the Transaction Documents or any agreement between the Secured Party and Debtor is impaired; or there shall occur any materially adverse change in the business or financial condition of Debtor which is not remedied within thirty (30) days after notice thereof by the Secured Party to Debtor.

ECF No. 143, p. 726-28.

During the period relevant to this action, Clearwater was a manager-managed limited liability company, formed on March 30, 2017. ECF No. 141, ¶ 17; ECF No. 138, ¶ 14. Patricia Hoops, Hoops Sr.'s wife, was the only manager of Clearwater, and "she had sole authority to manage its affairs." ECF No. 138, ¶ 15; <u>see</u> ECF No. 142, ¶ 22. Clearwater set up various accounts with Defendant, including an investment management account with $2.3 million (the "Clearwater IMA"). ECF No. 137, ¶ 26; ECF No. 138, ¶ 9. A trust benefitting Jeremy Hoops and Jeffrey A. Hoops, II, Hoops Sr.'s sons, (the "CW Trust") owned 99% of the membership interests of Clearwater; and Patricia Hoops owned the remaining 1%. ECF No. 137, ¶ 17; ECF No. 138, ¶ 10. Hoops Sr. was the grantor of the Clearwater Trust. ECF No. 137, ¶ 17. Brent Walls has been the Chief Financial Officer ("CFO") for Clearwater since its inception. Deposition of Patricia Hoops (Oct. 12, 2021), at 25:23-26:5, 26:16-18, 28:5-12.

In April 2019, Clearwater and Defendant became parties to a Commercial Loan Agreement ("Clearwater Loan Agreement") which

"memorialized a line of credit up to $11 million provided to Clearwater by [Defendant]" ("Clearwater Line of Credit"). ECF No. 138, ¶ 21; ECF No. 141, ¶ 32. "The Clearwater Loan Agreement designated the Clearwater IMA as the collateral for the Clearwater Line of Credit." ECF No. 138, ¶ 22; ECF No. 141, ¶ 33.

Paragraph 9 of the Clearwater Loan Agreement defined the following, among other events, as Events of Default:

> (a) _Default on Payment of the Indebtedness_. Failure of [Clearwater] to make any payment within ten (10) days of when due on the Indebtedness.[5]
>
> * * *
>
> (c) _Cross Default_. Should [Clearwater] and/or any of its affiliates default under any loan, extension of credit, security agreement, or other debt owing to Lender, if such default is not cured within any applicable cure period.
>
> * * *
>
> (k) _Adverse Change_. An adverse change occurs in [Clearwater's] financial condition in any material respect.

---

[5] The agreement defines "Indebtedness" as:

> The word "Indebtedness" means the Loan, together with all other obligations, debts and liabilities of Borrower to Lender, evidenced or arising under the Loan Documents or any other source, including without limitation principal, interest, and costs and expenses for which Borrower is responsible, as well as all claims by Lender against borrower, or any one or more of them if more than one, whether now or hereafter existing,. . . arising from or related to the Loan; whether Borrower may be liable individually or jointly with others; whether Borrower may be obligated as guarantor, surety, or otherwise . . . .

ECF No. 136, Ex. 24, p. 4. Defendant does not contend, and nothing in the record indicates, that Clearwater was in payment default under the Indebtedness.

ECF No. 136, Ex 24, pp. 16-17.   Although the Clearwater loan documents provided for cross-default by any affiliate, the loan was not cross-collateralized, and Clearwater did not guarantee the Blackjewel/Revelation obligations.

Paragraph 11 of the Clearwater Loan Agreement further provided in relevant part:

> **<u>Remedies Upon Default</u>**.   If an Event of Default occurs under this Agreement, which remains for a period of ten (10) days for a monetary default or a period of thirty (30) days for a non-monetary default (or such other period as agreed to by Borrower and Lender) following written notice provided to Borrower (except as to a monetary default in Paragraph 9(a) for which no notice is required), at any time thereafter, Lender shall have all the rights of a secured party at law, in equity, and all rights as set forth in the Loan Documents.   In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:
>
> * * *
>
> (b)   *Assemble Collateral*.   Lender may require Borrower to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral.

<u>Id.</u>, p. 18.   To facilitate Defendant's ability to enforce its remedies under the loan agreement with respect to the Clearwater IMA, Defendant and Clearwater entered a Control Agreement, which provided, among other things, that Defendant as lender could deliver to itself as intermediary a notice terminating Clearwater's access to the Clearwater IMA.   ECF No. 141, ¶ 37.[6]

---

[6] The control agreement provides that the intermediary must terminate Clearwater's access to the account if the lender "at any time" delivers a notice so instructing.   <u>Id.</u>   This language does not purport to authorize the bank as

On June 28, 2019, counsel for Plaintiff's senior lender ("Riverstone") informed Defendant of Debtors' plan to file bankruptcy. ECF No. 138, ¶ 45; ECF No. 141, ¶ 41. After learning of this, Defendant placed Debtors' accounts on "post no debit" restriction which required Defendant "to manually decide whether transactions should be processed." ECF No. 141, ¶ 42; see also ECF No. 138, ¶ 47.[7]

Over the weekend of June 28, 2019, Debtors and Clearwater reached an agreement in which Clearwater and Hoops Sr. "would provide DIP financing that included $9 million of new money ('DIP Loan')." ECF No. 138, ¶ 50; ECF No. 141, ¶ 51; Case No. 19-30289 ECF No. 12, p. 6, n.6. Debtors sent a proposed order approving the DIP Loan ("DIP Order") and the proposed loan agreement ("DIP Note") to Defendant. ECF No. 138, ¶ 52.

Defendant learned of Debtors' imminent bankruptcy filing when it received a call from counsel for Riverstone on June 28, 2019. ECF No. 138, ¶ 45; ECF No. 141, ¶ 41. In the early morning of July 1, 2019, Debtors filed for bankruptcy petition under chapter 11 of the Bankruptcy Code. Case No. 19-30289, ECF No. 1. Shortly

---

lender to deliver the notice "at any time"—it merely provides that the intermediary must comply anytime such a notice is delivered.

[7] The parties dispute the extent and effect of the restrictions on the account, with Plaintiff contending that the "post no debit" status amounted to an account freeze, or at a minimum, had that effect. ECF No. 138, ¶ 49; ECF No. 141, ¶ 42. Regardless of whether the "post no debit" status constituted a "freeze," is not material to these motions for the reasons set forth herein.

thereafter, Plaintiff and Defendant discussed the DIP Order. ECF
No. 137, ¶ 53; ECF No. 138, ¶ 58. Defendant informed Debtors of
its decision that it "would not allow funds from Clearwater's
accounts to be used for the DIP Loan." Id., ¶ 61.

Also on July 1, Defendant informed Clearwater that Clearwater
was in default under the Clearwater Loan Agreement because of the
default of its affiliate Blackjewel. ECF No. 138, ¶ 62; ECF No.
141, ¶ 47. "It also advised that, until the defaults were cured,
it would exercise its right under the Control Agreement to
exclusive control over the Clearwater IMA." ECF No. 141, ¶ 47.
Defendant specifically "conditioned access to Clearwater's
accounts, and use of funds contained therein, upon Clearwater's
agreement to pay outstanding obligations of Blackjewel and
Revelation." ECF No. 54, ¶ 15. Without access to funds, Debtors
were forced to cease operations on July 1, send employees home,
and close over 30 active mines. ECF No. 138, ¶ 77.[8] On July 2,
Defendant "issued a rescission of [Defendant's] exclusive control
over the Clearwater IMA and informed Clearwater that [Defendant]
would allow Clearwater to use over $9.6 million in the Clearwater
IMA." ECF No. 138, ¶ 78; see ECF No. 141, ¶ 56.

Defendant asserts that it was acting within its contractual
rights to exercise its remedies for default, including taking

---

[8] This statement of fact by Plaintiff is not disputed in Defendant's response
and is therefore deemed admitted. ECF No. 131, ¶ 2.

control of the Clearwater IMA, and that "[t]here was not cure
period or notice requirement."  ECF No. 141, ¶ 48.

### IV. Standard Of Review

Summary judgment is appropriate when the matters presented to
the Court "show that there is no genuine dispute as to any material
fact and movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986).  In considering a motion for summary
judgment, the Court must construe the "facts and inferences drawn
therefrom in the light most favorable to the non-moving party."
Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418
(4th Cir. 2004).  The party moving for summary judgment has the
initial burden of proving the absence of a genuine issue of
material fact by "citing to particular parts of materials on the
record."  Fed. R. Civ. P. 56(c)(1)(A); Celotex, 477 U.S. at 323.
Once this initial burden has been met, the nonmoving party must
then set forth specific facts sufficient to raise a genuine issue
for trial.  Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio
Corp., 475 U.S. 574, 586-87 (1986).  "A dispute is genuine only
if, on the entirety of the record, a reasonable jury could resolve
a factual matter in favor of the non-movant."  Sweats Fashions,
Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987)
(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).
Determinations of credibility, weighing the evidence, and drawing

legitimate inferences from the facts are not appropriate on a motion for summary judgment. <u>Anderson</u>, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." <u>Id.</u>

The court may consider any evidence in the record or submitted by the parties if it would be possible to introduce the evidence at trial. <u>See</u> Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). What matters is not that the parties submit evidence in support or opposition to the motion in an admissible form, but that the "substance or content of the evidence . . . be admissible . . . ." <u>Gully Brook Revocable Tr. v.</u> <u>Cook (In re Cook)</u>, Nos. 15-81220, 16-09015, 2017 Bankr. LEXIS 364, at *12 (Bankr. M.D.N.C. Feb. 9, 2017) (quoting 11 James Wm. Moore et al., <u>Moore's Federal Practice</u>, ¶ 56.91[2] (3d ed. 2014)).

When the record is insufficient for the court to determine either all claims or all elements of a single claim in connection with a motion for summary judgment, the court nevertheless may grant a motion for summary judgment in part as to any portion of a claim or with respect to an affirmative defense. 10B Charles Alan Wright & Artur R. Miller, <u>Federal Practice and Procedure</u> §§

2734, 2735, and 2737 (and cases cited therein); <u>see</u> <u>also</u> Fed. R.
Civ. P. 56 Committee Notes on Rules – 2010 Amendment ("The first
sentence of [Rule 56(a)] is added to make clear at the beginning
that summary judgment may be requested not only as to an entire
case but also as to a claim, defense, or part of a claim or
defense."). In providing such relief, the court may find that
certain facts, issues, or portions of claims have been established
for purposes of trial and may grant partial summary judgment on an
affirmative defense. Wright & Miller at §§ 2734, 2735, and 2737.

### V. Discussion

The First Amended Complaint asserts four claims for relief
against Defendant: (1) Tortious Interference with Business
Relations, (2) Aiding and Abetting Breach of Fiduciary Duty and
Tortious Conduct, (3) Unjust Enrichment, and (4) Equitable
Subordination of Defendant's Proofs of Claim. ECF No. 28.
Plaintiff moves for summary judgment in its favor on the tortious
interference with business relations claim. Defendant moves for
summary judgment on all four claims.

### A. Tortious Interference with Business Relations

Plaintiff and Defendant each assert that it is entitled to
summary judgment under Count I.

1.    **There are no genuine issues of material fact regarding
      two prima facie elements of Plaintiff's tortious
      interference with business relations claim.**

In the Motion for Partial Summary Judgment, Plaintiff argues

that it is entitled to summary judgment because the uncontroverted record establishes the prima facie elements of the claim for tortious interference with prospective business relations, and that Defendant was not legally justified in interfering.

### a.    Defendant intentionally interfered.

Under West Virginia law, "[o]ne who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." Torbett v. Wheeling Dollar Sav. & Tr. Co., 173 W. Va. 210, 215 (1983) (quoting Rest. 2d of Torts § 766B). The elements of a claim for tortious interference with business relations are: 1) the existence of a contractual or business relationship or expectancy; 2) an intentional act of interference by a party outside that relationship or expectancy; 3) proof that the interference caused the harm sustained; and 4) damages. Id. at 210; see Webb v. Paine, 515 F. Supp. 3d 466, 483 (S.D. W. Va. 2021). The first element is not in dispute as Defendant concedes that there was "a contractual or business relationship or expectancy." ECF No. 141, at 12.

To establish the requisite intent, the plaintiff must

establish that the defendant intentionally interfered with the
relationship. "[A]n act that leads to interference by coincidence
is insufficient." In re 201 N. George St., LLC, 551 B.R. 786, 792
(Bankr. N.D. W. Va. 2016). Plaintiff argues that Defendant
"intentionally prevented Clearwater from accessing funds to make
the DIP Loan." ECF No. 138, at 15. Defendant counters that the
disruption was an incidental result as Defendant had no intent to
disrupt the loan but acted merely to protect its collateral. ECF
No. 141, at 13. Defendant's assertion is contrary to the
undisputed facts and its own admissions. Defendant has previously
stated that it "acted to 'prevent' funds from being used to make
the DIP Loan." ECF No. 149, at 2; see ECF No. 12. Additionally,
in the Memorandum for Motion to Dismiss, Defendant conceded that
it "did not want its collateral to be available for use by
Clearwater or Debtors until Debtors' outstanding debts to
[Defendant] were satisfied." ECF No. 12, at 3. Defendant took
control of the Clearwater account specifically "to prevent its
collateral from being used to provide post-petition financing."
ECF No. 141, ¶ 50. Defendant cannot successfully contend that the
inability of Clearwater to make the loan was merely incidental to
Defendant's exercise of control over the Clearwater funds. The
effect of preventing the loan was the specific and admitted purpose
of Defendant's action. To the extent that Defendant argues that
the result was incidental because Defendant was justified in doing

so to protect its interests, Defendant incorrectly conflates its affirmative defense with the prima facie element of the claim. Therefore, Plaintiff has established that Defendant's act of preventing access to the funds intentionally interfered with Clearwater's ability to make the loan, subject to any defense of justification, which will be discussed below.

> **b.  The record does not establish that Defendant's interference caused harm or the amount of any damages for purposes of summary judgment.**

Plaintiff argues that the inability to access funds caused harm to Debtors because Debtors were unable to satisfy payroll obligations and were forced to suspend all business operations and to send all employees home.   ECF No. 143, Ex. 1, p. 298: 4-11. Among other things, Plaintiff contends that these actions resulted in lost profits, exposure to WARN claims by employees, and a non-operating forced liquidation which required Debtors to sell their assets.   In Defendant's counter-statement of facts, Defendant does not deny that the lack of access to the DIP funds and any other source of liquidity caused Debtors to cease operations.   Therefore, that fact is deemed admitted for purposes of Plaintiff's Motion for Partial Summary Judgment.   See ECF No. 131, ¶ 2.   Although the lack of access to funds caused Debtors to cease operations, the record is insufficient to determine as a matter of law that Defendant's actions caused either the lack of access to funds or the amount of any damages caused thereby.

The first day hearings were on July 1, 2019, and Defendant lifted its control of the Clearwater IMA during the night of July 1-2, 2019.  ECF No. 143, Ex. 37.[9]  When the DIP motion was renewed the following day, the Court did not approve it.  Before the hearing on July 2, 2019, Debtors filed a supplement to the DIP motion.  Case No. 19-30289, ECF No. 36.  In the supplement, Debtors informed the Court that the terms in the DIP motion remained the same, except that the proposed DIP loan by Clearwater would be subordinated to a new DIP loan from Riverstone (the "Riverstone DIP Loan"), but the liens securing the Clearwater loan would prime the pre-petition liens held by Riverstone and Defendant.  Defendant contends that the Court's disapproval resulted, at least in part, in terms that required a priming lien and a release of Hoops and related parties, rather than a single day of delay and the cessation of business.  ECF No. 141 at 11, ¶¶ 58-60.  The Court has reviewed the record, and, construing all facts in favor of Defendant as the Court must do at this stage of the litigation, it cannot determine as a matter of law that Debtor would have gained access to the funds if Defendant had not limited access to the Clearwater IMA.

Even if causation can be established at trial, the amount of

---

[9] The time and date stamp on Ex. 37 indicate that it was sent on July 2, 2019 at "1:02:11 AM (UTC)."  Defendant contends that Ex. 37 indicates eastern time of 9:02:11 p.m. on July 1, 2019.  See ECF No. 141, pp. 9-10 n.3.  Any difference is immaterial for purposes of summary judgment.

damages similarly is in dispute. Both parties have offered different views on the amount of damages based on the opinions of their experts. ECF No. 141. Specifically, the record is insufficient to establish the amount of any damages from the loss of operations or any damages related to the ultimate forced liquidation of Debtors' mining operations. With respect to the amount of any damages, this Court has excluded those portions of Weis's opinion, subject to affording Plaintiff the opportunity to file an amended report. Thus, there is a genuine dispute as to the amount and causation of any damages, and Plaintiff is not entitled to summary judgment as to those issues.

### 2. **Defendant's actions were not justified.**

Defendant argues that Plaintiff is not entitled to summary judgment, and that it is entitled to summary judgment because, due to the default of Clearwater's alleged affiliate Blackjewel, it acted properly in taking control of the Clearwater IMA and holding those funds on the condition that Clearwater pays the obligations of Blackjewel and Revelation. Contrary to Defendant's assertion, it was not entitled to take control of the Clearwater IMA immediately on the declaration of default, and even if it had been so authorized, it exercised more control than necessary to protect its interests.

In defense to a prima facie case for tortious interference, a defendant may prove "lawful justification or privilege for its

behavior as an affirmative defense." <u>Torbett</u>, 173 W. Va. at 217.

To prevail on the affirmative defense of justification, the

defendant must show that 1) it had a financial interest, 2) it did

not use wrongful means, and 3) it acted only to protect its claimed

interest.  Rest. 2d of Torts § 769, <u>see</u> <u>Mid-Vol Coal Sales, Inc.</u>

<u>v. Balli Steel PLC</u>, No. 1:11-0985, 2014 U.S. Dist. LEXIS 194992

(S.D. W. Va. Aug. 26, 2014).

The undisputed facts in the record demonstrate that Defendant

used wrongful means under the terms of its loan documents, and

that it acted beyond the extent necessary to protect any legitimate

financial interests.  Defendant argues that it did not use wrongful

means because Blackjewel and Clearwater are affiliates; thus,

Defendant was authorized to freeze Clearwater's funds.  According

to § 9(c) of the Clearwater Loan Agreement, a default by any of

Clearwater's affiliates on its obligations to Defendant would

constitute a default under Clearwater's loan.

None of the agreements define the term affiliate.  When a

contract does not define the term, the court looks at the word's

ordinary meaning.  <u>Mey v. DIRECTV, LLC</u>, 971 F.3d 284, 289 (4th

Cir. 2020), <u>see</u> <u>Nisbet v. Watson</u>, 162 W. Va. 522, 251 S.E.2d 774

(W. Va. 1979).  The Fourth Circuit has stated that "an affiliate

is commonly understood as a company effectively controlled by

another or associated with others under common ownership or

control." <u>Mey</u>, 971 F.3d at 289.

Defendant contends that Clearwater and Blackjewel are affiliates because "they shared common ownership and control." ECF No. 137, at 15.  According to Defendant, the Hoops family "had common ownership interests in both Blackjewel and Clearwater," and "[Hoops Sr.] controlled both Blackjewel and Clearwater."  ECF No. 137, at 15-16.  Although the organizational documents demonstrate that Blackjewel and Clearwater did not have common ownership and Hoops Sr. was not a manager of Clearwater, whether Hoops Sr. exercised effective control over Clearwater to render it an affiliate of Blackjewel is a question replete with disputed issues of material fact.  The evidence, considered in a light most favorable to Defendant for purposes of Plaintiff's motion, is sufficient that a reasonable factfinder could determine that Hoops Sr. controlled Clearwater.  Therefore, summary judgment is inappropriate to determine whether a default existed under the Clearwater Loan Documents.

> **a. Even if there were a default, Defendant was not entitled to exercise control over the Clearwater IMA under the applicable Loan Documents.**

Even if Blackjewel were an affiliate of Clearwater, Defendant was not entitled to exercise its remedies under the Clearwater Loan documents by taking control of the Clearwater IMA on July 1, 2019, the very day it gave notice of default.  Relying solely on the language of the Clearwater Loan Agreement and the Control

Agreement,[10] see ECF No. 141, pp. 5-6, Defendant contends that it

had the right to take control of the Clearwater IMA immediately

upon default because that the requisite cure period applied only

to its authority to exercise its general rights as a secured party,

rather than the additional contractual rights and remedies set

forth in the Clearwater Loan Agreement, including the right to

assemble its collateral.

Defendant contends that the interpretation of the agreement

is a question of law for the Court.  ECF No. 137, p. 14 ("It is

the province of the court . . . to interpret a written contract"

(citing iPacesetters, LLC v. Douglas, 239 W. Va. 820, 831-32, 806

S.E.2d 476, 487-88 (2017) (under the undisputed facts of the case,

the trial court appropriately interpreted the contract as a matter

of law, citing Stephens v. Bartlett, 118 W. Va. 421, 191 S.E. 550,

552 (1937), for the proposition that "[i]t is the province of the

court, and not of the jury, to interpret a written contract"))).

Although the Court agrees that, under West Virginia law, it is the

province of the Court to interpret an unambiguous contract, the

Court first must determine whether the contract is unambiguous.

See, e.g., Braden v. Chesapeake Appalachia, Inc., No. 5:13CV107,

2014 Dist. LEXIS 164435, *8-9 (N.D. W. Va. Nov. 21, 2014) (citing

---

[10] Defendant cannot successfully rely on the language in the Control Agreement
for the reasons stated above.  See Section II, supra. n.6 (and accompanying
text).

Fraternal Ord. of Police, Lodge No. 69 v. City of Fairmont, 196 W. Va. 97, 468 S.E.2d 712, 715 (1996)).  If the contract is unambiguous, the Court will interpret the contract as a matter of law according to its plain meaning.  Braden, 2014 Dist. LEXIS at *8-9.  Only if the contract cannot be interpreted according to its plain meaning may the court rest its interpretation "'on differential findings by a trier of fact, derived from extrinsic evidence as to the parties' intent with regard to an uncertain contractual provision, [those questions are left for the jury].'" Id. at *9 (quoting City of Fairmont, 196 W. Va. 97).

"[T]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous.  The question as to whether a contract is ambiguous is a question of law to be determined by the court." Am. States Ins. Co. v. Surbaugh, 231 W. Va. 288, 295, 745 S.E.2d 179, 186 (2013).

> Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations . . . "A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction."

Braden, 2014 Dist. LEXIS at *10 (quoting City of Fairmont, 196 W. Va. 97) (emphasis added).  Therefore, in determining whether language is ambiguous, a court first should apply the rules of construction to determine if the terms of the contract are

inconsistent or capable of multiple interpretations in light of those rules.

When construing contracts, "'the function of a court is to ascertain the intent of the parties as expressed in the language used by them.'"  In re Hard Rock Expl., Inc., 580 B.R. 202, 212 (Bankr. S.D. W.Va. 2017) (quoting Cotiga Dev. Co. v. United Fuel Gas Co., 147 W. Va. 484, 128 S.E.2d 626 (1962)).  The terms "are not to be construed in a vacuum, but are to be read in their context."  Chesapeake Appalachia, L.L.C. v. Hickman, 236 W. Va. 421, 436, 781 S.E.2d 198, 213 (2015).  The language of a contract

> must be considered and construed as a whole, giving
> effect, if possible, to all parts of the instrument.
> Accordingly, specific words or clauses of an agreement
> are not to be treated as meaningless, or to be discarded,
> if any reasonable meaning can be given them consistent
> with the whole contract.

Syl. Pt. 3, Moore v. Johnson Serv. Co., 158 W. Va. 808, 219 S.E.2d 315 (1975); see also, Bruce McDonald Holding Co. v. Addington, Inc., 241 W. Va. 451, 825 S.E.2d 779 (2019) (construing coal leases under the general rules of construction applicable to all contracts in West Virginia and quoting Moore and Hickman).

Applying these principles, the language in the Clearwater Loan Agreement cannot reasonably be construed as suggested by Defendant.  The Clearwater Loan Agreement provided in relevant part:

> If an Event of Default occurs under this Agreement, which
> remains for a period of ten (10) days for a monetary

default or a period of thirty (30) days for a non-
monetary default (or such other period as agreed to by
Borrower and Lender) following written notice provided
to Borrower (except as to a monetary default in Paragraph
9(a) for which no notice is required), at any time
thereafter, Lender shall have all the rights of a secured
party at law, in equity, <u>and all rights as set forth in
the Loan Documents</u>. In addition and without limitation,
Lender may exercise any one or more of the following
rights and remedies:

<u>* * *</u>

(b)   ***Assemble Collateral***.  Lender may require
Borrower to deliver to Lender all or any portion of the
Collateral and any and all certificates of title and
other documents relating to the Collateral.

ECF No. 136, Ex. 24, p. 17 (emphasis added).

Defendant contends that its contractual requirement to give

notice and provide ten days for Clearwater to cure any default

applied only to its exercise of its general rights as a secured

party under applicable law, but not to the specifically enumerated

contractual "rights and remedies" listed in the following

sentence.  Defendant bases this argument on the language in the

loan agreement providing that these contractually enumerated

rights were "[i]n addition and without limitation" to the general

categories of rights in the previous sentence.  To the extent that

Defendant contends that these additional remedies for default fell

outside the ambit of the cure provision based on this language,

such an interpretation is untenable.

The only reasonable interpretation of this provision that

gives meaning to the entirety of the contract is that the

specifically listed "rights and remedies" were rights and remedies additional to those Defendant held under applicable law as a secured party.  The specific terms of the agreement make clear that all Defendant's rights and remedies arising on default— whether under applicable law or the Clearwater Loan Agreement—are subject to the cure period, unless the default is a payment default by Clearwater, which did not exist.  The language of the Clearwater Loan Agreement is unambiguous and expressly provides that all rights in the Loan Documents are subject to the cure period.  ECF No. 136, Ex. 24, p. 17 ("at any time thereafter, Lender shall have . . . all rights as set forth in the Loan Documents").

Loan Documents is defined to include the Clearwater Loan Agreement.[11]  After the cure period, Defendant was entitled to exercise all rights of a secured creditor <u>and</u> all the rights in the Loan Documents.  Defendant cannot successfully argue that the reference to "all" rights under the Loan Documents only refers to those rights in the Clearwater Loan Agreement other than those rights arising in connection with a default.  There is no such limitation in the agreement.  Reading this language in context, the reference occurs in a paragraph governing remedies on default, and specifically refers to "all" rights that the bank may have in the event of a default.  To interpret the "rights" that are subject

---

[11] <u>Id.</u> at 4 ("**Loan Documents.**  The term "Loan Documents" means this Agreement . . ..").

to the cure period and to which the agreement refers as solely those rights under the Loan Documents other than the rights arising upon a default would result in Defendant having no other rights under the agreement until a default occurred and the cure period passed.  Such a reading is absurd.  There would be no right to payment, for example, and no default ever could occur.  There is simply no other way to interpret this reference without entirely ignoring it, which the Court may not do.  Syl. Pt. 3, <u>Moore</u>, 158 W. Va. 808, 219 S.E.2d 315.

Because the agreement is susceptible to only one reasonable interpretation with regard to the applicability of the cure period, the Court must apply the plain language of the contract.  <u>U.S. use of Westinghouse Elec. Corp. v. Marietta Mfg. Co.</u>, 339 F. Supp. 18, 23 (S.D. W.Va. 1972) (applying West Virginia law, the court may not "alter or amend the contract of the parties where they have expressed their intent in clear and unambiguous language").  Under these terms, and even assuming for purposes of summary judgment that Blackjewel and Clearwater were affiliates, Defendant was not entitled to exercise its rights, including taking control of the Clearwater IMA, until at least ten days after declaring a default.[12] By taking control of the account on the day it declared default, it acted beyond its rights under the Loan Agreement.

---

[12] The Court makes no determination here whether the default(s) by Blackjewel were monetary or non-monetary defaults with respect to the Clearwater Loan Agreement.

Defendant's actions not only were taken by improper means and in violation of the terms of the Clearwater Loan Agreement, but they also were excessive and taken with a wrongful purpose. Defendant has conceded that it was fully aware that Debtors could not operate without access to funds.  Defendant acted to prevent access to the only funds potentially available at the time and used that action as leverage to demand that Clearwater pay debts that Clearwater had not guaranteed and had no obligation to pay. Moreover, Defendant prevented access to the entirety of the Clearwater IMA, rather than only an amount necessary to secure payment of the Clearwater obligations.[13]

Defendant cites various cases for the proposition that "requesting payment of a bankruptcy debtor's obligations by a cross-defaulted entity is not improper."  ECF No. 141, p. 28.  The cases cited are inapposite.  As Defendant concedes in its brief, in In re Formica, No. 20-23404-ABA, 2021 Bankr. LEXIS 1297 (Bankr. D.N.J. May 12, 2021), the court solely analyzed whether a creditor violated the automatic stay.  ECF No. 141, at 28.  That case not

---

[13] Defendant argues that it was justified in restricting access far beyond the amount necessary to secure the Clearwater Loan because, even if sufficient collateral would have remained in the Clearwater IMA to secure the Clearwater Loan after Clearwater had funded the loan, "[a]pproximately a third of that remainder [consisting of 'fluctuating bonds and equities'] could change in value at any moment."  ECF No. 141, p. 28.  This argument neither authorized Defendant to act beyond its contractual remedies, nor was justifiable.  Defendant negotiated the ten-day cure period and the loan to collateral ratio.  See ECF No. 143, Ex. 12, § 5(n) (requiring Clearwater to "[m]aintain a Loan to Collateral Ratio of eighty percent (80%)").  The loan agreement therefore specifically contemplated and provided for the risk of market fluctuations.

only is inapplicable because it merely considered whether the demand violated the stay, but it also is factually distinguishable. In <u>Formica</u>, the issue was not whether a cross-default provision applied. Instead, the debtor had guaranteed the affiliate's debt, and there was a dispute over whether the lien against the debtor's property additionally secured the debt of the affiliate. <u>Formica</u>, 2021 Bankr. LEXIS at *1. In this case, neither Clearwater nor Blackjewel guaranteed the other's obligations, and Defendant did not contend that the Clearwater and Blackjewel/Revelation obligations were cross-collateralized.

The other cases Defendant cites are no more applicable or helpful to Defendant than <u>Formica</u>. In each of those cases, as Defendant concedes, ECF No. 141 at 27 n. 11, the creditor merely exercised its contractual rights. In contrast, Defendant knew that Debtors had no funds to operate their vast mining operations and employed thousands of employees across the country; yet Defendant still acted beyond its contractual rights, demanded payment of a debt for which Clearwater had no obligation as a condition of releasing its funds, and prevented access to amounts far in excess of those necessary to protect its legitimate and contractual economic interests.[14] These actions were sufficient

---

[14] Among the cases cited by Defendant is <u>Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp.</u>, 320 Or. 638, 891 P.2d 639(1995). In that case, the Supreme Court of Oregon, applying Oregon law, dismissed a claim for intentional interference because the defendant merely was exercising its contractual rights. <u>Id.</u> at 651-52 ("'either the pursuit of improper objective of harming plaintiff

to establish that Defendant acted with a wrongful purpose under West Virginia law.

**B.  Defendant's cross-motion relies on materially disputed facts and requests that the Court weigh and consider conflicting evidence.**

Plaintiff asserts that Defendant aided Hoops Sr.'s breaches of fiduciary duties owed to Debtors by permitting him "to make and direct numerous financial transfers to himself and to Hoops Entities from funds that belonged to Plaintiffs." ECF No. 28, ¶ 37. West Virginia courts recognize aiding and abetting tortious conduct. Roney v. Gencorp, 431 F. Supp. 2d 622, 634 (S.D. W. Va. 2006) (quoting Clark v. Milam, 847 F. Supp. 409 (S.D. W. Va. 1994)). The two elements that must be satisfied are 1) knowledge of the breach of duty and 2) giving substantial assistance. Under West Virginia law, "the ability to recover for aiding and abetting necessarily depends upon the ability of a plaintiff to prove the

---

or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships may give rise to a tort claim for those injuries;'" quoting Top Serv. Body Shop, Inc. v. Allstate Ins. Co., 283 Or. 201, 205, 582 P.2d 1365 (1978)). The court observed that the element could be fulfilled if the defendant either used improper means or acted for an improper purpose. Id. at 651. Because the defendant in Uptown Heights was exercising its contractual rights, the plaintiff did not allege that the actions were taken by an improper means; it alleged only an improper purpose, and the court expressly limited its holding "to the 'improper purpose' prong of the tort." Id. at 652. The court held that exercising contractual rights cannot constitute an improper purpose. Id. In this case, Defendant acted outside the terms of its contract, instructed itself as intermediary to take control of the Clearwater IMA at a time that it had no contractual right to do so, and demanded that Clearwater pay liabilities that it did not owe in exchange for releasing control over funds that Defendant had no right to control, all in violation of the terms of the Loan Agreement, and all at a time that it knew that Blackjewel had no funds for operation or payment of its employees.

underlying tort." Roney, 431 F. Supp. at 638; see Clark, 847 F. Supp. at 419-20. Contrary to Defendant's contention, see ECF No. 142 at 20 n.12, there is no requirement under West Virginia law that Defendant owed an independent fiduciary obligation to Debtors. Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bk. Of W.Va., 244 W. Va. 508, 530, 854 S.E.2d 870, 892 (2020) (reversing dismissal of aiding and abetting breach of fiduciary duty claim and finding that there is no requirement that the bank independently owe a fiduciary obligation to the plaintiff. "The petitioners are not asserting that City National violated a fiduciary duty; they claim that City National assisted a third party in breaching the third party's duty.").

Plaintiff contends that Defendant aided Hoops Sr. by allowing him to use funds in Debtors' accounts to "satisfy obligations of non-Debtor entities owned by Hoops and his family members." ECF No. 142, at 19. Citing various communications between its employees and Debtors, see ECF No. 137, at 21-22, Defendant contends that the record is sufficient to demonstrate as a matter of law that it did not have knowledge that Hoops Sr. was breaching his fiduciary duties. ECF No. 148, at 6.

Determining whether a defendant is liable for assisting and encouraging a tort is a factually intensive inquiry. See Clark, 847 F. Supp at 419-20 (listing the following factors for a court to consider: the nature of the act encouraged; the amount of

assistance given; the defendant's relation to the tortfeasor; the defendant's state of mind; and the foreseeability of the harm). Plaintiff counters with evidence in the record that the bank knew the disputed transactions were not typical or normal. ECF No. 142, p. 10, ¶ 58 (and citations therein). Granting Defendant's motion would require the Court to weigh evidence, which a court may not do at summary judgment.

Construing the record in a light most favorable to Plaintiff, there is sufficient evidence in the record from which a trier of fact could conclude that Defendant was aware that the actions of Hoops Sr. constituted a breach of his fiduciary duties, and that Defendant provided substantial assistance. See Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) ("'Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits;'" quoting Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015); when considering a motion for summary judgment, "courts must . . . refrain from 'weighing the evidence or making credibility determinations;'" quoting Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017)). Therefore, Defendant's motion for summary judgment under Count II is denied.

**C. Defendant is not entitled to summary judgment on Plaintiff's claim for unjust enrichment.**

Defendant contends that it is entitled to summary judgment on

Plaintiff's claim for unjust enrichment. Unjust enrichment is established by three elements: "(1) a benefit conferred upon the plaintiff, (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." Veolia Es Special Servs., Inc. v. Techsol Chem. Co., No. 3:07-0153, 2007 U.S. Dist. LEXIS 88127, at *25 (S.D. W. Va. Nov. 30, 2007). "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." Rich v. Simoni, No. 1:12CV12, 2014 U.S. Dist. LEXIS 138352, at *26 (N.D.W. Va. Sep. 30, 2014); quoting Aladdin Elec. Assocs. v. Town of Old Orchard Beach, 645 A.2d 1142, 1145 (Me. 1994).

The First Amended Complaint claims that Defendant was unjustly enriched when Defendant "received payments for obligations of other entities from funds properly belonging to Plaintiffs" and when Defendant removed $136,272.14 "from Blackjewel's account prior to July 1, 2019 and paid to itself." ECF No. 28, ¶ 51-52. Defendant argues that unjust enrichment is inapplicable because the transactions were governed by its express contract, and it did not benefit from the transfers.

Construing the facts in a light most favorable to Plaintiff,

Defendant benefited from the transactions paying the obligations
of other entities.   ECF No. 142, at 23.   (App. 14 – Bond Dep. at
201:20-24) (". . . It benefited [Defendant] to have the overdrafts
covered; right? A: Yes, but it also -- we also could have returned
many of the items, so it benefited the entities as well.").[15]   Thus,
a factfinder could find that Defendant benefited from the
transactions.

Defendant argues that its actions were governed by an express
contract.   The Supreme Court of Appeals of West Virginia has held
that where an express contract "establishe[s] the parties' rights
and duties" and the substance of an unjust enrichment claim "falls
squarely within" the subject matter of such express contract,
breach of contract "provides an adequate remedy at law." Gulfport
Energy Corp. v. Harbert Private Equity, LP, 244 W. Va. 154, 160,
851 S.E.2d 817, 823 (2020).   Furthermore, "as a species of quasi
contract relief, unjust enrichment does not exist to provide an
alternative means of recovery for breach of contract." Id.
Defendant correctly contends that an act may be governed by a
contract even when the act is not being permitted by such contract.
ECF No. 148, at 8.

Plaintiff counters that Defendant improperly removed
$136,272.14 from Plaintiff's account on June 28, 2019, without

---

[15] Because the Court is denying summary judgment on this claim, it is unnecessary
for the Court to consider the extent of any putative unjust enrichment.

informing Plaintiff of the action, seeking authorization, or disclosing the debits after the fact. ECF No. 142, at 24. Plaintiff further claims that the disputed debit transaction exceeded the amount which the Blackjewel Loan Agreement authorized to be withdrawn. Id. Defendant claims that the debit transaction in question occurred in response to overdue loan payments and, moreover, that the Blackjewel Loan Agreement authorized Defendant to setoff collateral in this manner. ECF No. 137, at 25. These transactions were governed by an express contract between the parties, even if the actions were in breach of the terms of that contract and fall outside the purview of a claim for unjust enrichment.

Nevertheless, viewing the facts in a light most favorable to Plaintiff, and even if the disputed $136,272.14 fell within the subject matter of the parties' express contract, the record is insufficient to determine as a matter of law that the disputed debit transactions to other entities similarly could be contemplated to be within the subject matter of an express contract between the parties. Whether Defendant had contractual authority to satisfy amounts due from other entities may have been governed by an express contract; however, having reviewed the record in its entirety and construing it in a light most favorable to Plaintiff, the Court is unable to determine that all of the disputed debit transactions were within the contemplation of the Blackjewel Loan

Agreement or any other express contract between the parties.

Accordingly, Defendant's motion for summary judgment under Count III is denied.

**D.   Defendant failed to establish that Plaintiff is not entitled to equitable subordination.**

Defendant contends that it is entitled to summary judgment with respect to Plaintiff's claim for equitable subordination because its conduct was neither wrongful nor egregious.

When considering whether to equitably subordinate a creditor's claim, "courts seek to remedy some inequity or unfairness perpetrated against the bankrupt entity's other creditors or investors by postponing the subordinated creditor's right to repayment until others' claims have been satisfied." Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc.), 453 F.3d 225, 232 (4th Cir. 2006), quoting Sender v. Bronze Group, Ltd. (In re Hedged-Invs. Assocs., Inc.), 380 F.3d 1292, 1297 (10th Cir. 2004). A court may "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or order that any lien securing such a subordinated claim be transferred to the estate." 11 U.S.C.S. § 510. "Equitable subordination is an extraordinary remedy, which should be applied sparingly." Va. Broadband, LLC v. Manuel, 538 B.R. 253, 263 (W.D.

Va. 2015).

Equitable subordination "is remedial and requires a showing
that: (1) the claimant engaged in inequitable conduct; (2) that
conduct injured other creditors; and (3) subordination is
consistent with other bankruptcy law." Elswick Co., LLC v.
Comm2013 CCRE12 Crossing Mall Rd. LLC (In re Tara Retail Grp.,
LLC), 595 B.R. 215, 223 (Bankr. N.D.W. Va. 2018); see In re ASI
Reactivation, Inc., 934 F.2d 1315, 1320 (4th Cir. 1991); Anderson
& Assocs. PA v. S. Textile Knitters De Hond. Sewing Inc. (In re S.
Textile Knitters), 65 F. App'x 426 (4th Cir. 2003). "The burden
of showing that equitable subordination is appropriate is on the
party requesting it." Manuel, 538 B.R. at 264. "The proof
required by the above test varies according to the status of the
creditor." In re Daugherty Coal Co., 144 B.R. 320, 323 (N.D.W.
Va. 1992).

Defendant argues that it did nothing wrong, and, even if it
had, "tortious conduct alone is not 'egregious' or 'gross' as a
matter of law." ECF No. 137, at 27-28. Although the Court agrees
that a non-insider defendant's conduct must be egregious to support
equitable subordination, the standard is not as high as Defendant's
argument suggests. See 3 Collier on Bankruptcy ¶ 510.05[3][c]
("egregious conduct" can include "fraud, spoliation or
overreaching"). The Court has determined that Defendant's actions
employed sufficiently wrongful means for purposes of intentional

interference with contract, and a reasonable factfinder could determine that these actions were sufficiently overreaching to be egregious as contemplated by § 510.  Construing the record in a light most favorable to Plaintiff, Defendant is not entitled to summary judgment on the issue of inequitable conduct sufficient to support a claim of equitable subordination.

### VI. Conclusion

**IT IS THEREFORE ORDERED, ADJUDGED, and DECREED** the Motion for Summary Judgment is denied, and the Motion for Partial Summary Judgment is granted in part as set forth herein.

[END OF DOCUMENT]